[No. 6807.  Decided March 7, 1908.]

*In the Matter of The Estate of* JOHN SULLIVAN, *Deceased.*[1]

DESCENT AND DISTRIBUTION—PROOF OF HEIRSHIP—EVIDENCE—SUF-FICIENCY.  The evidence is sufficient to sustain findings that claim-ants are next of kin as the only first cousins, where deceased's par-entage appeared from records of his parents' marriage, and parish records of baptism of himself and sisters and a brother, the prior death of his father, mother and sisters and brother being clearly shown, and where, a short time before his death, the deceased took out administration upon his sisters' estates, making oath that he was their only heir, and the relationship of the claimants with de-ceased's family was shown by satisfactory evidence, while the testi-mony of other claimants was largely traditional, and failed to estab-lish the identity of their ancestor with that of deceased's.

SAME—NEXT OF KIN—COUSINS—DEGREES—STATUTES — CONSTRUC-TION.  First cousins take to the exclusion of second cousins under Bal. Code, § 4620, subd. 5, providing that in the absence of issue, husband, wife, father, mother, brothers or sisters, the estate shall go to the next of kin, in equal degree, excepting that, of collateral kindred claiming through different ancestors, those claiming through the nearest ancestor shall be preferred.

ADMINISTRATORS—SETTLEMENT — EFFECT — SUBSEQUENT  ORDERS — JUDGMENT—RES JUDICATA.  The settlement of a so-called final ac-count of an administrator, does not preclude him from asserting, as an individual, error in subsequent orders affecting his relation to the estate since the making of the orders.

ADMINISTRATORS—APPEAL—RIGHT TO APPEAL FROM DISTRIBUTION. An administrator has an appealable interest in an order of final dis-tribution of an estate, since it is his duty to guard against error in distribution without ample provision for obligations of the estate.

ADMINISTRATORS — FINAL — DISTRIBUTION — PROVISION FOR DEBTS. An order of final distribution of an estate, requiring all real and personal property except cash on hand to be turned over to the dis-tributees at once, will, on appeal by the administrator, be modified so as to decree distribution subject to the charge for final settlement purposes, where more than a year has elapsed since the filing of the report showing the cash on hand, which cash may not be ample for all purposes of final settlement.

[1]Reported in 94 Pac. 483.

Appeal from a judgment of the superior court for King county, Griffin, J., entered January 30, 1907, upon findings in favor of certain claimants to the estate of a decedent, in an action to determine the lawful distributees thereof, after a trial before the court without a jury. Affirmed.

*Walter A. Keene, Richard Winsor,* and *G. A. C. Rochester,* for appellant Cornelius Sullivan.

*Kenneth Mackintosh* and *R. W. Prigmore,* for appellants State of Washington and County of King.

*Hughes, McMicken, Dovell & Ramsey,* for appellant Terence O'Brien.

*William B. Allison,* for appellants Margaret Sullivan Desmond *et al.*

*W. E. & Frank P. Burke, Oliver C. McGilvra,* and *John Kelleher,* for appellants Maria Lester *et al.*

*Geo. B. Cole, William C. Widdfield,* and *John E. Humphries,* for appellants Dennis J. Sullivan *et al.*

*Samuel H. Piles, George Donworth, James B. Howe,* and *Charles H. Farrell* (*Shank & Smith,* of counsel), for respondents Edward Corcoran *et al.*

HADLEY, C. J.—In this cause the superior court entered a judgment declaring who are the lawful distributees of the estate of John Sullivan, deceased. The several appeals hereinafter mentioned bring that judgment here for review. The deceased died in Seattle on September 26, 1900. He owned several tracts of real estate in Seattle, one of which consisted of two lots on First avenue upon which stood, and now stands, the four-story brick building known as the "Sullivan Building." That property is very valuable. Mr. Sullivan was a native of Ireland, and left that country when a very young man, first embarking upon a ship as a sailor. He came to Seattle many years ago, and was thereafter a resident of that city until the time of his death. In the year 1900 he visited Ireland and parts of the continent of Europe. He returned

home late in the summer of that year, and died soon after his return. He was never married. No written will was discovered, and it appearing that no testamentary disposition had been made of the estate, Terence O'Brien was, in November, 1900, appointed administrator. A large number of persons have at different times filed claims, seeking to share in the estate. All of these persons claimed to be heirs of the deceased, except Marie Carrau, who claimed the entire estate under an alleged nuncupative will. The claim of the latter was determined adversely to her, and the hearing now being reviewed was for the purpose of ascertaining the legal heirs of the deceased.

Edward Corcoran, of Dublin, Ireland, and Hannah or Johanna Callaghan, of Cork, Ireland, first asserted their claim to the estate in the year 1901, claiming as first cousins of the deceased. The final account of the administrator was filed in November, 1902, and the said Corcoran and Callaghan, claimants, filed a petition for distribution of the estate in the same month. The final account was settled in January, 1903, and the petition for distribution came on for hearing, but was continued from time to time until in November and December, 1906. Meantime other claims of heirship were made, and the state of Washington and county of King filed a petition for the escheat of the entire estate, on the alleged ground that the deceased died without heirs. Depositions in behalf of the various claimants were taken from time to time in Ireland and at different places in the United States and Canada. Under different commissions a number of witnesses who had formerly testified were reexamined. Through the medium of the depositions a large amount of evidence, both oral and documentary, was secured. This evidence, together with oral evidence heard at the time of the hearing, was submitted for the consideration of the court. After an extended hearing, the court made and entered findings of facts and conclusions of law, the substance of the more important and pertinent ones being hereinafter stated.

It was found, that the deceased was never married, and that he left neither issue nor descendant, nor wife, nor father nor mother, nor sister nor brother, nor uncle nor aunt, nor grand-uncle nor grand-aunt, nor ancestor lineal nor collateral, nor any person of nearer kin than first cousin; that he left surviving him his first cousin, the aforesaid Edward Corcoran, a lawful child of Margaret Corcoran, a deceased sister of the mother of said John Sullivan, and also left surviving him his first cousin and one of his heirs at law and next of kin in equal degree with said Edward Corcoran, the said Johanna Callaghan, a lawful child of his mother's deceased sister, Bridget Callaghan; that he left surviving him no other first cousin than the aforesaid persons, and no other person of as near kin to him as the said first cousins, and that at the time of the death of said Sullivan the said Corcoran and Callaghan were each entitled to an undivided one-half interest in said estate. It was further found, that on the 13th day of November, 1901, the said Johanna Callaghan, for a valuable consideration, executed and delivered to Samuel H. Piles a deed conveying to the latter an undivided one-half interest of the undivided interest of said Callaghan in all the property and assets of the estate of said deceased; that on the 15th day of the same month the said Edward Corcoran in like manner conveyed to said Piles an undivided one-half interest of his undivided interest in the property of the estate; that on the 21st day of April, 1904, said Johanna Callaghan died in Ireland, intestate, leaving surviving her as her only heir at law and next of kin her first cousin, the said Edward Corcoran, and leaving estate in King county, Washington, consisting of the aforesaid interest in John Sullivan's estate remaining in her after the execution of the deed above mentioned to Samuel H. Piles; that in May, 1904, Charles H. Farrell was duly appointed and qualified as administrator of the estate of said Johanna Callaghan, and that he is now such administrator.

From the foregoing facts the court concluded that Edward Corcoran is entitled to an undivided one-fourth of said estate

as heir at law and next of kin of said John Sullivan and, subject to the administration proceedings upon the estate of said Johanna Callaghan, he is also entitled to an additional undivided one-fourth of said estate; that Charles H. Farrell, as administrator of the estate of Johanna Callaghan, is entitled as such administrator to an undivided one-fourth of said estate for the purposes of administration; that Samuel H. Piles in his own right is entitled to an undivided one-half of the estate of the said Sullivan as the grantee of said Corcoran and Callaghan under the deeds above mentioned. A decree requiring distribution in accordance with the above conclusions was entered. The administrator, Terence O'Brien, was also directed to forthwith file a supplemental report showing all of his receipts and disbursements in the matter of said estate since January, 1903, when the final account was settled, and to pay the amount collected by him over to the aforesaid persons in the proportions above stated, after deducting from the gross amount collected since said date such amounts as the court shall, on consideration of such supplemental account, authorize to be deducted. The administrator was also directed to turn over to the distributees the possession of the personal property and real estate belonging to the estate.

There are five appeals from the decree of the trial court, representing as many distinct interests: (1) Cornelius Sullivan, who claims the entire estate as a surviving brother of the deceased John Sullivan; (2) Margaret Sullivan Desmond, Michael Sullivan, Johanna Sullivan, Roger Sullivan, and Philip Sullivan, who claim to be second cousins of the deceased, and that they are his next of kin and only heirs at law; (3) Maria Lester, Thomas Sullivan, Catherine McClellan, Margaret Croke, Ann Brooks, Martin Dwyer, Mary Ryan, Mary O'Brien, Alice Whalen, Dennis J. Sullivan, Timothy Sullivan, · Owen Sullivan, Elizabeth Fatherby, Margaret Lusty, Catherine Brown, Rose Hodgins, Michael Hickey, John Hickey, Mary Nagle, Nora O'Leary, and Ann McCabe, who claim to be first cousins of the deceased; (4)

the state of Washington and county of King, who assert that Sullivan died without heirs, and who claim that his property has escheated; (5) Terence O'Brien in his own right and as administrator. With the exception of a very few minor particulars wherein we think no prejudicial error resulted, the errors assigned by the claimant appellants relate to the correctness of the court's findings of facts and conclusions of law. These assignments involve an examination of the entire evidence, since the cause is heard *de novo* here. The record of the evidence is very voluminous, including more than three thousand pages, some typewritten and some printed, as recording the testimony of living witnesses. All this, together with its accompanying mass of exhibits and documentary evidence, presented to us a record of formidable magnitude as we approached it with the desire to discover therefrom the truth in relation to the facts in controversy. The writer has endeavored to read the testimony of all the witnesses and, unless some of it has been inadvertently overlooked, he has read it all. The briefs in the case comprise more than one thousand pages, practically all of which is devoted to a discussion of the evidence. It must be seen, therefore, that an analytic discussion here of all the evidence upon the several appeals is wholly impracticable.

We think the findings of the trial court are sustained by evidence that is convincing. That evidence was to the effect that John Sullivan's parents were Peter Sullivan and Abigail McAuliffe, who were married at the church of St. Finbarr, in Cork, Ireland, in 1832. The parish records show the baptism of the children of this marriage as follows: Eliza in 1834, Ellen in 1836, and John in 1840. In all of these entries of baptism the names of the parents are given as Peter Sullivan and Abigail McAuliffe, except that in the case of the baptism of Eliza the name of the mother is given as "Abbey" McAuliffe. Investigation by counsel for the state and county discovered in the said parish records a record of the baptism of a fourth child of said parents, the child's name being

Timothy, and he having been baptized in 1844. The names of the other members of the family appeared in census returns, but the name of Timothy never appeared in any of these returns and, as he is not remembered by any of the living acquaintances of the family, of whom a number testified, counsel for respondents argue that it may be fairly presumed that he died at a very early age, which we think is altogether reasonable. The father, Peter, was for many years employed at Beamish & Crawford's brewery in Cork, and for some years before his death received a pension from the brewery which the brewery records show was paid up to and including the week of his death. The evidence clearly shows the death of the father, mother, and sisters long before the death of John Sullivan. The sister Eliza was never married. In the year 1877 she became insane and was committed to an asylum. She died in the private insane asylum of Dr. Bull, on Black Rock Road, Cork, in 1886. The sister Ellen was married at Cork in 1854, to Emanuel de Silva, a Portuguese sailor. No child was born to this marriage, and Ellen died in 1871. She was the first of the family, except Timothy, to die, and was followed by the mother, father, and sister Eliza in the order named. John left home when a young man and never returned to Cork until the year 1900. Eliza and Ellen each left sums of money on deposit in a savings bank in Cork, which had been lying for years unclaimed. When John was in Cork in the year 1900, he took out letters of administration for the purpose of withdrawing this money. He made oath that he was the surviving brother of the two women and that he was their next of kin and lawful heir. This money was afterwards remitted to John Sullivan at Seattle, and the draft was found among his effects after his death. It was cashed and became a part of the assets of his estate. The claiming of that money by the deceased, and the oath he made in order to get it, we regard as convincing evidence of his identity with the aforesaid family. He was undoubtedly the last of the family to survive. We are also satisfied from the evidence

that Edward Corcoran and Johanna Callaghan were the first cousins of the deceased from his mother's side of the family, and that they were the only surviving first cousins as found by the court. This is shown by the testimony of a number of Irish witnesses who knew them all, together with marriage and baptismal records.

Margaret Sullivan Desmond and her group of claimants admit the identity of John Sullivan's family as above stated, but they claim their relationship from the father's side, and that they are second cousins of the deceased. The survivorship of Corcoran and Callaghan as first cousins being established, it follows that the Margaret Sullivan Desmond group of claimants as second cousins are not entitled, under our statute, to share in the estate, for the reason that Bal. Code, § 4620, subd. 5 (P. C. § 2702), provides that in such case the descent shall be to the next of kin. The provision is as follows:

"If the decedent leaves no issue, nor husband nor wife, and no father nor mother, nor brother nor sister, the estate must go to the next of kin, in equal degree, excepting that when there are two or more collateral kindred in equal degree, but claiming through different ancestors, those who claim through the nearest ancestor must be preferred to those claiming through an ancestor more remote."

Under that statute first cousins are preferred to second cousins.

The Maria Lester and Dennis J. Sullivan group of claimants do not deny the identity of John Sullivan's parentage as found by the court, but they claim that they are first cousins of the deceased from his father's side of the family. The testimony in support of these claims is not convincing to us. Many of the claimants now reside in the United States and Canada, and their testimony is largely of a somewhat traditional character, by which they show that they have heard declarations from other members of their family that, from the marriage of their ancestors Timothy Sullivan and Hanor, Hanorah, or Mary Burke, there were born seven sons and two daughters, one of the sons being Peter, who, they claim, was

the father of John Sullivan. This family resided in or near Dualla, Cashel Fethard, county Tipperary, Ireland, and the son Peter is said to have left home and gone to Cork to reside when he was a young man, and his family seem to have known but little of him after that time. We think the identity of this Peter Sullivan with that of John Sullivan's father is not established.

The claimant Cornelius Sullivan denies the identity of the deceased's parentage as above set forth, and claims that he is a surviving brother of the deceased. He asserts that the name of the deceased's father was Cornelius Sullivan, and that he was married to Johanna Harrington. He says that the above were the parents of five children, John, Mary, Jerry, Kate, and Cornelius; that the oldest, John, was the deceased John Sullivan, and that the youngest is the claimant himself. He produced witnesses who testified that they had heard John Sullivan say that he had a brother Cornelius, and also a brother Jerry. Some witnesses testified that a woman came to Seattle some years ago and remained some weeks, who was in and about the store of the deceased and to whom they heard him refer as his sister. The claimant says this was his sister Mary, but that he is unable to find what became of her after she left Seattle. This appears to constitute a chain of facts based upon the declarations of the deceased, but to establish them the claimant must assert, and does do so, that the deceased swore falsely when he made oath that he was the surviving brother of Eliza Sullivan and Ellen de Silva in order that he might withdraw their deposits from the bank in Ireland, and that, too, but a few months before his death. As against the positive testimony of many Irish witnesses who knew the family from the childhood of Sullivan, that he was their brother, and as against his own solemn oath to the same fact, we cannot consider the testimony submitted by this claimant as convincing.

The claimants the state of Washington and county of King do not deny the identity of the parentage of the de-

ceased as asserted by the respondents, and in their brief they admit that, if any fact is established by the evidence, it is established that John Sullivan was the brother of Eliza Sullivan and Ellen de Silva, but they assert that Sullivan died without surviving heirs. It is perhaps inconceivable that a human being may die leaving no heirs, no next of kin. Somewhere among men must be found his next of kin to whom the law of descent would carry his property. It is, of course, often impossible to prove who such may be, and in such cases the estate escheats. The state can maintain no claim if the next of kin show their right to inherit, as it is not the policy of the state to absorb private property if the legal heirs of a decedent are discovered. The counsel for the state and county have exercised great energy in this case and have apparently neglected no possible research in their efforts to show that the legal heirs of the deceased have not been discovered, but, for the reasons heretofore stated, we think their contention must fail. The findings of the trial court being well sustained by evidence in the record, which we think has not been overcome by other evidence, we shall not disturb them. We also think there was no reversible error in denying the motions for a new trial. Many days were spent in the trial, and an exhaustive hearing was had after long time for preparation. The affidavits in support of the motion for a new trial do not disclose any sufficient ground for going over the whole matter again.

The appeals of Terence O'Brien, individually and as administrator, raise the question that the court erred in decreeing a distribution of any part of the estate until all of the administrator's accounts, final and supplemental, have been fully settled. A motion has been made to dismiss these appeals, one on the ground that as administrator he has no appealable interest, and the other on the ground that as an individual he took no exceptions to the finding of the court that his final account was settled in January, 1903. That account has, in the light of subsequent history, become other than a final

account, although so called then and in this record. He is
not precluded by that finding from asserting, as an individual,
error as to the court's decree so far as it affects his relations
to the estate since that so-called final account was filed and
settled. As administrator he has an appealable interest, to
the end that it is his duty to guard against the error of a
distribution without some ample provision for all known obli-
gations of the estate. The motions to dismiss the appeals are
denied.

An account settled in January, 1903, was called the admin-
istrator's final account, but the necessity for prolonged ad-
ministration having arisen by reason of contests between claim-
ants for the estate, other and supplemental accounts have be-
come necessary. The court found that the administrator had
in his hands, in January, 1903, after the settling of his final
account, $1,120.42; that he has since that time received and
disbursed certain sums of money on account of said estate, and
that as shown by his last supplemental report he has in his
hands a large sum of money belonging to the estate. The
decree declares that said money belongs to, and should be paid
to, the distributees, after deducting therefrom such amounts
as the administrator shall by the court be authorized to deduct.
A supplemental report, filed by the administrator by direction
of the court on the day the decree of distribution was entered,
showed a balance of cash in his hands of $27,424.34. The
court doubtless anticipated that this sum would be sufficient
to meet the administrator's additional fees and other expenses,
and so made the decree that the whole sum could be used for
that purpose if required, but provided that any balance left
shall be paid to the distributees. The additional amount to
be allowed the administrator is yet to be determined after a
full hearing upon that subject. More than a year has elapsed
since said supplemental report was filed, and the sum in the
administrator's hands must have materially increased from the
estate's rent receipts. While the sum would be a large fund
to reserve for settlement with an administrator of an ordinary

estate covering an ordinary period of administration, yet in view of the long time covered by the administration and the somewhat extraordinary features attending it, we think neither the trial court nor this court can prejudge the matter without a comprehensive hearing and say that the accumulated funds in the administrator's hands are ample for all purposes of final settlement. The court ordered that all the real estate and personal property except the cash shall be turned over to the distributees at once. In the interest of avoiding a prolongation of administrative expenses, we think the order to turn over possession should stand as made, but to avoid any embarrassment on the part of the court, if it should be determined that the administrator has not sufficient cash in his hands for all final settlement purposes, we think that part of the decree should be modified to the effect that the real estate shall be turned over to the possession of the distributees subject to the charge of any final settlement expenses, if the funds collected by the administrator shall be adjudged to be inadequate for that purpose.

The decree is in all respects affirmed except as to the modification above indicated, and the cause is remanded with instructions to proceed in accordance with this opinion. The appellant O'Brien in whatever capacity he has appealed shall recover his costs on appeal, and the respondents shall recover their costs on all the other appeals.

MOUNT, DUNBAR, FULLERTON, CROW, and RUDKIN, JJ., concur.

ROOT, J.—Before I became a member of the court, the firm of attorneys of which I was a member appeared in the superior court for certain persons claiming to have an interest as heirs in this estate—however none of such claimants is now before this court. There being in my mind some question as to my qualification to participate, I have taken no part in any of the decisions rendered by this court in the matter of said

estate, and for that reason do not participate in the present instance.

## ON REHEARING.

[Decided April 17, 1908.]

PER CURIAM.—The appellants state and county, and also Cornelius Sullivan, have filed petitions for rehearing herein. In the petition of the state and county vigorous complaint is made of the following statement in the opinion: [*Ante* p. 639, 94 Pac. 486.] "The claimants, the state of Washington and county of King, do not deny the identity of the parentage of the deceased as asserted by the respondents." We concede that the statement quoted, when considered alone, is inaccurate; and we do not desire that counsel's contention shall be misunderstood by reason thereof. The entire sentence from which the above is taken reads as follows: "The claimants, the state of Washington and county of King, do not deny the identity of the parentage of the deceased as asserted by the respondents, and in their brief they admit that if any fact is established by the evidence, it is established that John Sullivan was the brother of Eliza Sullivan and Ellen de Silva, but they assert that Sullivan died without surviving heirs." The above statement in the opinion was based upon the following, which we here quote from the opening brief of appellants state and county, at pages 180, 181:

"Cornelius Sullivan claims as a brother to the deceased through wholly different parentage and necessarily repudiates Bessie Sullivan and Ellen Silva as sisters of the deceased. Like respondents, however, the evidence to establish Cornelius Sullivan's relationship depends largely and principally upon memory testimony of witnesses; and, regardless of how strong this testimony may be, the fact that John Sullivan has made sworn statements that Bessie Sullivan and Ellen Silva were his sisters, and the correspondence between Mrs. Lyons and John Sullivan, extending over a period of more than twenty years, with reference to the sister Bessie, and the character of that correspondence, unquestionably establishes that Bessie Sullivan and Ellen Silva were his sisters. If any fact is established by the evidence, it is the relationship of the deceased with these two sisters."

From the above concession that Eliza or Bessie Sullivan and Ellen de Silva were the sisters of John Sullivan, and with the fact established as our previous discussion in the opinion had stated, that the parents of the three were Peter Sullivan and Abigail McAuliffe Sullivan, we saw no room for dispute as to the identity of the parentage. The statement that the said appellants "do not deny the identity of the parentage" is, however, probably misleading to the reader not conversant with the case. While the appellants concede that the relationship of brother and sister existed between the three, yet they did, and do still, contend that the mother of the three was not Abigail McAuliffe Sullivan, but that her name was Eliza or Bessie. From this contention they deduce the conclusion that the mother was not the aunt of Johanna Callaghan and Edward Corcoran. As stated in the main opinion, we think the evidence established that Abigail McAuliffe was the mother, and that she was the aunt of Callaghan and Corcoran. No fact seemed to us to be more fully established than that Peter and Abigail McAuliffe Sullivan were the parents of Eliza or Bessie Sullivan and Ellen de Silva, and with these appellants conceding that John Sullivan was their brother, there seemed to be virtually no ground for dispute as to the identity of the parentage.

Counsel complain that the statement as made in the opinion puts them in the position of conceding a fact which they had never admitted. The explanatory correction herein made in no way affects the result in our minds, and we have made the statement for the reason that the writer of this and the former opinion, and also the members of the court desire that no apparent injustice may be done to counsel, who have certainly been untiring and vigilant in their efforts to secure what they in their petition for rehearing call "a splendid heritage to the school children of the state." The petition of Cornelius Sullivan is practically a reargument of the evidence as it was submitted at the hearing. We see no reason for changing our views of the evidence, and both petitions are denied.