[No. 12340.  Department Two.  August 20, 1915.]

*In the Matter of the Estate of* THEODORE MILLER.[1]

ESCHEAT — ESTABLISHMENT — PRESUMPTIONS — BURDEN OF PROOF. While the burden is upon the state, in establishing an escheat, to overcome the presumption that the decedent left heirs, the escheat is *prima facie* established, where, in addition to death, nonmarriage, and intestacy, it is shown that, after diligent search, the state had been unable to find that he left ascertainable heirs.

SAME—ESTABLISHMENT—KINSHIP—BURDEN OF PROOF. Upon advertising for heirs, a claimant, in order to prevent an escheat and take by descent, has the burden of showing that he is next of kin; especially in view of the statute of escheats, Rem. & Bal. Code, § 1357, providing that a decree of escheat shall be entered if within a specified time no heirs shall have appeared "and established their claim."

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE. A new trial should not be granted for new evidence that is only cumulative, and there was no diligence and no assurance that it would change the result.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered September 12, 1913,

[1]Reported in 151 Pac. 105.

escheating the estate of a decedent, in an action to determine the lawful distributees thereof, tried to the court.   Affirmed.

*Mark F. Mendenhall,* for appellant Robert Nelson Miller.

*L. H. Prather* and *Del Cary Smith,* for appellant Levi Miller *et al.*

*Hurn & Upton,* for appellant Gleason.

*George H. Crandell, Ira Honefenger,* and *Nat U. Brown,* for respondent.

Ellis, J.—This is an appeal from a decree of escheat.

Theodore Miller, a resident of Spokane county, died, a bachelor and intestate, at Los Angeles, California, on March 14, 1911.   He left an estate in Spokane county, Washington, of about $7,000 in money.   On April 25, 1911, one Joseph Simpson was appointed administrator of the estate and filed the inventory and appraisement required by law.   No heirs appearing, the court, on October 16, 1911, ordered the administrator to advertise for heirs, which he accordingly did. In response to this advertisement, a large number of persons appeared, claiming the estate either singly or in groups as heirs and next of kin of the deceased and in antagonism to each other.   Issues were made up and tried to the court. Evidence was taken on behalf of the various claimants and on behalf of the state, and on the 12th day of September, 1913, the court rendered its decision holding that none of the claimants had established a right of inheritance.   A decree was accordingly entered escheating the estate to the state of Washington for failure of known heirs.

Only three of these claimants or groups of claimants have appealed.   They are as follows:   (1) Levi Thomas Miller and Sarah Rothwell, brother and sister, the children of one Daniel David Miller, formerly of Grangeville, Idaho, but now dead.   Their claim rests upon the hypothesis that this Daniel David Miller was a brother of the deceased and that all

other brothers and sisters are presumably dead without issue. (2) Mary Gleason, of Louisville, Kentucky, only daughter and sole surviving heir of one Margaret Miller Terrell. Her claim is based upon the assumption that her mother, now dead, was the only sister of the deceased and that he had no brother. (3) Robert Nelson Miller, of Syracuse, New York, whose claim is based upon the hypothesis that deceased was the son of claimant's elder brother, one George Miller, now deceased.

Before proceeding with the discussion of the law of the case, it may be well to epitomize the known facts relating to the decedent, so far as developed by the testimony of those who knew him well in his lifetime. The first actually known of him by any witness was between the years 1879 and 1882. He was then living on a homestead in what was known as the California settlement in the Big Bend country, near where the town of Wilbur, Washington, is now located. At that time he was a man of some fifty or fifty-five years of age. He was not known to be able to read or write, except possibly to sign his name, and so far as the evidence shows, never actually wrote a letter, one of his neighbors doing his writing for him. He lived on this homestead until he proved up in 1886, and afterwards removed to Spokane, where he lived near the present administrator, Simpson, who also wrote letters for him. Shortly before his death, he went to California for his health, and finally died in a sanitorium in Los Angeles. All that is known of his early life is what he told various neighbors and friends, both in the Big Bend country and later in Spokane. These all substantially agree. He told various witnesses that he was born in New York, came to California when quite young, one witness stating that he said he first crossed the plains in 1847. He freighted and mined in California, Nevada and Colorado, and later came to Oregon and was in Portland when that place was very small, as he expressed it, "when there were stumps in the streets." He was also in Seattle, Washington, when it was

nothing more than a lumber camp and sawmill. He spoke
of having made one visit home in the early days, going by
way of Montana and the Missouri river, stayed but a short
time and returned to California, finally coming back to
Washington through Oregon and settling upon the home-
stead. So far as the evidence shows, he never told any one
from what part of the state of New York he came, except
to say that, when a boy, he fished through the ice in Lake
Champlain. He talked but little of his early life. This is
practically all we know certainly of the real Theodore Miller.
We recite these facts simply to show the character of proof
furnished by the state to sustain the escheat.

Aside from the overruling of the motions for a new trial
filed on behalf of the several appellants, to which we shall
later advert, there is but a single question of law presented.
One of the appellants seems to rely largely upon the rule that
the law presumes that every decedent has left heirs capable
of inheriting and that the burden is upon the state, in order
to sustain an escheat, to rebut this presumption by proving
that decedent left no heirs. Cited in support of this rule, are
the following cases: *Bank of Louisville v. Board of Trus-
tees of Public Schools,* 83 Ky. 219, 5 S. W. 735; *University
of North Carolina v. Harrison,* 90 N. C. 385; *Hammond v.
Inloes,* 4 Md. 138; *State v. Teulon,* 41 Tex. 249; *Hughes v.
State,* 41 Tex. 10. From this rule, the appellants seem to
infer that any evidence, however slight, tending in any degree
to show a possible kinship between the decedent and a claim-
ant, is sufficient to establish heirship as against the state, and
defeat an escheat.

It is true that the burden in the first instance rests upon
the state to overcome by competent evidence the presumption
that the decedent left heirs capable of inheritance. But this
presumption is not so broad, nor the burden so onerous, as
counsel seem to assume. While there is a presumption that
there is somewhere someone next of kin to every decedent,

there is no presumption that any particular persons are his next of kin or that his next of kin are ascertainable. The state's burden is met when, in addition to proof of the actual death, nonmarriage and intestacy of the *propositus*, it has been shown that, after diligent search and inquiry, the state has been unable to find that he left ascertainable heirs. Any other rule would render an escheat impossible by making the presumption that there are next of kin to every intent an irrefragable presumption. When the state has shown these things, it has established *prima facie* the escheat of the property. The burden is then upon a particular claimant to prove, by the ordinary rules and competent evidence, that he is in fact the next of kin. This is not shifting the burden of proof, but is a mere progress of proof directed to an independent issue, the affirmative of which is in the nature of the case at all times upon the claimant of the property. He must prove his title. This view is clearly sustained by Chancellor Walworth in *People v. Fulton Fire Ins. Co.*, 25 Wend. (N. Y.) 205, 216, where he says:

"Indeed, it cannot be necessary for the attorney general, in any case, to give positive evidence of the failure of heirs of the person last seized, for the purpose of showing that the land has escheated. Everybody must, of necessity, have collateral relatives, unless the line of his descent from Noah, or that of all his relatives who might otherwise have inherited, has been broken by alienage or attainder, or crossed by a bar sinister. As the law, however, never requires an absurdity, it is not necessary to give anything like positive evidence that the inheritable blood of the person last seized does not flow in the veins of any other descendant of Adam, the original progenitor of the whole human race, in order to establish a title by escheat. But if no blood relatives of the person last seized are known to exist, the people of the state are presumptively entitled to the vacant succession. It is only necessary, therefore, for the counsel for the people to give general evidence, showing that no persons have been found to claim the premises as heirs at law of the person last seized; leaving it for those who wish to show a title out of the state,

either in themselves or a stranger, to prove that such heirs do in fact exist."

See, also, to the same effect *Crane v. Reeder*, 21 Mich. 24, 83, 4 Am. Rep. 430.

The appellants place much reliance on the following expression found in *In re Sullivan's Estate*, 48 Wash. 631, 94 Pac. 483:

"It is perhaps inconceivable that a human being may die leaving no heirs, no next of kin. Somewhere among men must be found his next of kin to whom the law of descent would carry his property. It is, of course, often impossible to prove who such may be, and in such cases the estate escheats. The state can maintain no claim if the next of kin show their right to inherit, as it is not the policy of the state to absorb private property if the legal heirs of a decedent are discovered."

This language, however, as we read it, sustains the view we have expressed. While it recognizes the undisputed fact that it is not the policy of the state to absorb private property by displacing legal heirs, it just as clearly recognizes the equally wholesome rule that those claiming to be next of kin must "show their right to inherit." A careful consideration of the authorities cited by the appellants convinces us that they do not militate against these views.

The case of *Bank of Louisville v. Board of Trustees of Public Schools, supra*, was an action by the board of trustees to escheat an unclaimed bank deposit. There was neither proof of actual death nor proof of nonmarriage. The trustees relied solely upon proof of absence of the depositor for over eight years without knowledge of his whereabouts to raise the presumption not only of death, but of death without heirs. The court held that this was insufficient to overcome the usual presumption that a person on his death leaves heirs, either lineal or collateral, near or remote, capable of succeeding to his estate. After discussing the authorities, the Kentucky court of appeals states the following as the correct rule:

"We conclude that the correct rule is, that whether such a presumption will be indulged must depend upon the circumstances shown in each particular case. If, for instance, circumstances are proven indicating nonmarriage or childlessness, then death without issue may be presumed. 2 Greenleaf on Evidence, section 354; 2 Wharton on Evidence, 1279. The statute, however, uses the word *'heirs'* and not *'issue,'* and the legal presumption is, that a person upon his death, leaves heirs, either near or remote, capable of succeeding to his estate. It was so held in the case of *Harvey v. Thornton,* 14 Ill. 217, and where, as in this case, the testimony is merely *negative* and relates to mere absence only, it is insufficient to create the presumption that the person died intestate and without heirs.

"It is true that, speaking in the broadest legal sense, comparatively few persons die without heirs, either near or remote, and that the doctrine of escheat proceeds upon the ground that no person appears to claim the estate; but in a case like this, where nothing is shown by the testimony but mere absence, it should not be presumed that the person died without heirs, or that none will appear to claim the property. Other circumstances besides absence should be shown, from which such a presumption may be fairly drawn."

None of the other cases cited by the appellants has gone farther than the one above quoted. In all of them the sole reliance of the state was in a mere presumption of death arising from long absence, without actual proof of death, nonmarriage or intestacy. In the case before us, the state has not only shown by proof too clear to admit of question, the death, intestacy and nonmarriage of the decedent, but advertised for heirs, the response to which was a flood of claimants whose claims are wholly inconsistent with each other, and none of whom have been able to furnish proof passing mere conjecture that he is in fact of any kin to the decedent.

Our statute clearly recognizes the rule as we have stated it. Reading by section numbers from Rem. & Bal. Code, it declares:

"1341. (8) If the decedent leaves no husband, wife, or kindred, the estate escheats to the state, for the support of

common schools in the county in which the decedent resided during lifetime, or where the estate may be situated."

"1356.   Whenever any person possessed of any property within this state shall die intestate leaving no heirs, such property shall escheat to, and the title thereto immediately vest in the state of Washington, subject, however, to existing liens thereon, the payments of decedent's debts, and the expenses of administration.

"1357.   Such estates shall be administered and settled in the same manner as other estates.   If at the expiration of eighteen months after the issuance of letters of administration no heirs shall have appeared and established their claim thereto, the court having jurisdiction of such estate shall render a decree escheating all the property and effects of such decedent to the state of Washington."

These provisions, especially the last one, clearly show that the escheat can only be defeated by the appearance of heirs who *establish their claim*.   There is no indication that the ordinary rules of proof are weakened to the extent that less cogent proof is required as against the state than as against other claimants.   The statute supports our view that, though there is a presumption that every decedent has left some person upon the face of the earth as next of kin, there is no presumption that any particular claimant is that person. To defeat the escheat and take by descent, the claimant must prove that he is that person.   This is a burden which he assumes at the beginning and must bear throughout.

Measured by these principles, we are satisfied that none of these appellants has sustained the burden.   It is not our purpose to discuss in detail the evidence advanced by these appellants.   We have read with the utmost care each of the abstracts of record furnished by the several appellants— much of them more than once.   We have also read the much confused and illy prepared statement of facts and the depositions thereto attached.   A discussion of the evidence would profit no one.   It could not change the result.   We are satisfied that none of these claimants has established with any degree of certainty any relationship to the deceased.   The

evidence of two of the claimants is so inconsistent with the known facts touching the decedent's life as to furnish fair proof that they were not of kin to him in any degree. That offered by the other appellant, while in most respects not positively inconsistent with such kinship, is vague and remote in time, place and circumstance. It is barely sufficient to raise a conjecture that possibly the claimant might be a relative of the decedent. It is by no means sufficient, using the language of the statute, to "establish his claim." The case is here, it is true, for a trial *de novo*, but we can find in the evidence no reasonable ground to say that the trial court erred in holding that none of these claimants has established kinship to the deceased.

It only remains to refer to the motions for a new trial. We have read the numerous affidavits and the one deposition filed in support of these motions. The new evidence offered is all cumulative and corroborative in its character. Moreover, no excuse is offered for not producing it at the time of the trial. There is not a word to indicate that any of it is newly discovered. In addition to this, we are by no means satisfied that, had all of this evidence been produced at the trial, it would have or should have changed the result. We have so often held that, under such circumstances, it is no abuse of discretion to refuse a new trial that it seems unnecessary to cite decisions to that effect. There is nothing in the nature of this case warranting a relaxation of the usual rule touching motions for new trial based upon alleged newly discovered evidence.

Upon a most careful consideration of the entire record, we are satisfied that the trial court has reached a correct result. The judgment is affirmed.

MORRIS, C. J., FULLERTON, MAIN, and CROW, JJ., concur.