[No. 26841.  *En Banc*.  June 1, 1938.]

*In the Matter of the Estate of* MICHAEL C. MAHER, *Deceased.*

M. G. SCHMIDT, *as Administrator, et al., Appellants,* v. MARGARET MAHER *et al., Respondents.*[1]

'Reported in 79 P. (2d) 984.

*C. T. Hardinger,* for appellant Schmidt.

*William H. Pemberton* and *Charles Snyder,* for appellant State of Washington.

*Hyland, Elvidge & Alvord, Monroe Watt,* and *Michael F. Ward,* for respondents.

BEALS, J.—Michael Maher, or Michael C. Maher, a bachelor, a resident of King county, Washington, died intestate, April 28, 1934, leaving estate in King county, subject to administration therein. After appropriate proceedings had, M. G. Schmidt was, May 11, 1934, appointed administrator of the estate and thereafter qualified as such.

November 26, 1935, the administrator filed his final report, alleging that the estate was ready to be closed, and also filed his petition for distribution, in which it was alleged that the administrator had made diligent effort to discover the heirs at law of the decedent, but had been unable to find any such heirs. The administrator prayed that the estate be distributed "as the court may order and direct," and that he be discharged from his trust.

December 31, 1935, the date fixed for the hearing on the final account and petition for distribution, Margaret Maher, Martin Maher, Agnes Hudson, and Julia Curtin appeared in the proceeding, claiming to be sisters and a brother of the decedent and entitled to receive portions of his estate as heirs at law. The matter was continued from time to time, and during the month of June, 1936, John Maher, Mary Hessian, and Robert William Rennie appeared, claiming that they were, respectively, a brother, a sister, and a

nephew (a son of a deceased sister) of Michael Maher, and consequently heirs at law. Depositions on behalf of the various claimants were taken and filed in the proceeding. In due time, the matter came on regularly to be heard before the court, the final account was approved, and a decree entered distributing the estate to the seven persons above named, one-seventh to each.

The state of Washington appeared in the proceeding through its supervisor of the inheritance tax and escheat division, claiming that the estate should escheat to the state, and, with the administrator, moved for a new trial. Upon the denial of their motions, the state and the administrator have prosecuted separate appeals from the decree of distribution.

Appellant supervisor has assigned error upon the admission in evidence of certain supplemental depositions of Mary Hessian and John Maher. Error is also assigned upon the refusal of the trial court to find that Michael Maher died without known heirs and that his estate should escheat to the state of Washington, and upon the decree entered distributing the estate to the persons above named as heirs at law of the decedent. Respondents have appeared and filed a brief in support of the decree as entered.

Respondents move to dismiss the appeal of M. G. Schmidt, as administrator, upon the ground that, under the law and the facts of this case, appellant, as administrator, was not aggrieved by the decree and has no right to appeal therefrom. August 14, 1937, the trial court entered, *ex parte*, an order authorizing and directing the administrator to appeal to this court from the decree of distribution which had been entered July 22, 1937, and further authorizing the administrator to deposit, out of the funds of the estate, the sum of two hundred dollars, to stand as security for costs on the appeal which the court directed be taken.

August 24th following, the administrator filed in the office of the county clerk his notice of appeal, which had been regularly served, and on the same day deposited the sum of two hundred dollars as a cash appeal bond.

The administrator has appeared in this court and filed briefs, urging only questions which concern the right of respondents to receive the estate of Michael Maher as his heirs at law. The administrator presents no question concerning any debts due from the estate or fees or allowances due himself or his counsel.

*In re Sullivan's Estate*, 48 Wash. 631, 94 Pac. 483, this court considered the appeals of several parties, including one taken by the administrator. Motions were made to dismiss the administrator's appeal upon the ground that as administrator he had no appealable interest in the order appealed from, it being also contended that he, in his individual capacity, had taken no exception to a finding of the court to the effect that his final account had been settled. Considering the motion to dismiss, this court said:

"That account has, in the light of subsequent history, become other than a final account, although so called then and in this record. He is not precluded by that finding from asserting, as an individual, error as to the court's decree so far as it affects his relations to the estate since that so-called final account was filed and settled. As administrator he has an appealable interest, to the end that it is his duty to guard against the error of a distribution without some ample provision for all known obligations of the estate. The motions to dismiss the appeals are denied."

Clearly, as stated by the court, it is the duty of an administrator to object to distribution of an estate until ample provision is made for the known debts due therefrom; and from an order failing to make an

adequate provision for the payment of such debts, the administrator may appeal.

*In re Welch's Estate,* 106 Cal. 427, 39 Pac. 805, the supreme court of California, in considering a motion to dismiss an appeal taken by an administrator, said:

"A motion to dismiss is made upon the ground that the appellant is not a party aggrieved; and in support of the motions are cited the numerous cases which decide that an executor or administrator has in general no such interest in the conflicting claims of heirs and devisees as will warrant his appeal from adjudications fixing their rights, and distributing the estate accordingly. [Citing cases.]

"The rule as declared by these cases does not admit of question. It is a sound proposition that administrators, general or special, like receivers and other trustees or custodians of funds for designated purposes, are not ordinarily affected by orders in reference to their disposition, and, therefore, will not be heard on appeal from such orders. But this rule has its well-defined limitations. Wherever an order or decree involves a construction of the proper exercise of the duties of the officer, wherever it presents a question as to the right or power of the trustee to comply with it, wherever obedience to it might subject him to liability, the rule does not operate."

In the case last cited, the court properly stated the general rule and correctly noted certain exceptions thereto, one of the exceptions being that recognized by this court *In re Sullivan's Estate, supra.*

The general rule is that an administrator, as such, cannot appeal from a decree of distribution determining the persons who should receive an estate, either as heirs at law of the decedent or as distributees under a will. *In re Cannon's Estate,* 18 Wash. 101, 50 Pac. 1021; *Cairns v. Donahey,* 59 Wash. 130, 109 Pac. 334; *In re Tucker's Estate,* 116 Wash. 475, 199 Pac. 765.

The administrator relies upon the opinion of this

court *In re Downings' Estates,* 146 Wash. 154, 262 Pac. 235, in which is found this language:

."In the present case, while counsel for appellants had represented the administrator with the wills annexed throughout the probate proceeding, upon the entry of the order for a decree of distribution the administrator himself could have appealed, in order to obtain a proper distribution of the estate under the law, since it is his duty to guard against error in distribution. *In re Sullivan's Estate,* 48 Wash. 631, 94 Pac. 483."

The language quoted was not necessary to the decision of any question presented in the case decided, as the administrator had not appealed. While it is the duty of the administrator "to guard against error in distribution," this duty extends no further than to see that all available evidence is fully and truthfully presented to the superior court at the hearing on the petition for distribution of the estate. When the superior court has determined that question, the duty of the administrator ends. The opinion of this court *In re Sullivan's Estate, supra,* went no further than to hold that an administrator could appeal from an order of distribution which failed to make adequate provision for payment of the debts due from the estate. That is an entirely different question, and the opinion *In re Sullivan's Estate* does not support the broad language, which is dicta merely, quoted from the opinion *In re Downings' Estates, supra.* The language contained in the opinion in the *Sullivan's Estate* case was explained in the opinion *In re Tucker's Estate, supra.*

While it is the duty of an administrator to guard against error in the distribution of an estate, by exercising the greatest possible care to see that the names of the persons entitled under the law to receive the estate, either as heirs at law or legatees, are brought to the attention of the court, and that their names and

respective interests are fully and correctly stated in the decree of distribution which is to be presented to the court for signature, when, after a full hearing, the court signs a decree of distribution, the interest of one acting as administrator of an estate terminates, and he, as such administrator, is no longer interested in the proceeding, in so far as the distributees are concerned, and can appeal from the decree of distribution only in connection with his fees or allowances, some question concerning debts due from the estate, or some matter which concerns his own liability as administrator.

An administrator is an officer of the court. His custody of the property of an estate is the custody of the court. While it is his duty to assist the court before which the probate proceeding is pending, in ascertaining the persons who, in fact and in law, are justly entitled to receive the estate, when the court, after a proper hearing, has determined the matter and designated the persons who are entitled to receive the estate, as to that phase of the proceeding the interest of the administrator ceases.

We are clearly of the opinion that the order of the court, entered on the administrator's petition, purporting to authorize the administrator to appeal from the decree of distribution, and which order the court later, and after the appeal had been taken, attempted to revoke, was improvidently entered. The appeal of M. G. Schmidt, as administrator, is accordingly dismissed.

On the merits, appellant supervisor argues that the record does not support the finding of the trial court contained in the decree of distribution, that the sole heirs at law of Michael C. Maher, deceased, and the persons entitled to the property of his estate, are the respondents above named; and that the trial court

erred in distributing the estate to them and in refusing to enter a decree of escheat. One of respondents resides in Ireland, several in England, and others in Australia.

The depositions of some of the heirs were offered and received in evidence, and two of the heirs, Mary Hessian and John Maher, testified by supplemental depositions, to the admission of which appellant objected. The matter of the admission of these supplemental depositions rested largely within the discretion of the trial court, and it cannot be held that they were erroneously read and received in evidence.

Photostatic copies of the petition for naturalization as an American citizen, declaration of intention, and certificate of naturalization of Michael Maher are in evidence. In these documents, the personal appearance of the petitioner is described as follows: Color, white; complexion, ruddy; eyes, blue; color of hair, brown; height, five feet, ten inches. It is also stated that the petitioner was unmarried. In these documents, it is stated that the petitioner, Michael Maher, was born in Clashagad, King's county, Ireland, January 8, 1864; that he came to the United States in 1886; and July 1, 1908, filed, in the United States district court at Seattle, his declaration of intention to become a citizen of the United States. He stated that his occupation was that of a farm laborer. April 16, 1913, he filed his petition for final letters of naturalization in the district court at Cordova, Alaska, where he was admitted to citizenship. By their petitions for the establishment of their status as heirs at law of Michael Maher, filed December 30, 1935, certain of respondents alleged that decedent was the son of William and Mary Maher, both deceased; that Michael Maher was born at Clashagad (a village in Dunkerrin, King's county, Ireland), January 8, 1865, and had several brothers

and sisters, as named, including a brother, Vincent Maher, born in 1870. Later, the other of respondents appeared, asking that their status as heirs at law of decedent be established.

Martin Maher, one of respondents, testified that his brother Michael left Ireland during the summer of 1886. In his petition for naturalization, Michael Maher stated that he sailed from Queenstown, Ireland, July 8, 1886, and landed at New York a week later. He was a man of rather limited education, though apparently a good citizen and an industrious farmer. Several of respondents, testifying by deposition, described their brother Michael's physical characteristics, and their description coincides in most particulars with the description of the Michael C. Maher whose estate is now being distributed.

Appellant calls attention to the fact that, in Michael Maher's declaration of intention to become a citizen, his complexion is described as ruddy, while some of respondents testified that his complexion was dark. Some of the witnesses also testified that his hair was black, while the declaration describes the color of his hair as brown. These variations are entirely immaterial. Many ruddy complexions might well be also described as dark, and some observers might describe a person's hair as black while others would call it brown.

The record discloses a real conflict as to the date of birth of Michael Maher. He stated, as above set forth, that he was born January 8, 1864. The evidence introduced by respondents shows that Margaret, daughter of William and Mary Maher, was born January 6, 1864, and was baptized the same day, her birth having been registered January 9th following. The birth of the next child, Michael, is stated to have occurred March 29, 1865, the birth having been registered June 13th of

the same year. The record of Michael's baptism was shown as January 8, 1865, a manifest impossibility. The records of the births and baptism of the other children appear at various dates until the year 1876. Some of respondents testified that their brother Michael was born 1864, while others fixed the year as 1865.

We have carefully considered this phase of the record, and agree with the trial court in holding that the discrepancies in dates do not require a holding that respondents are not heirs at law of the decedent. In other particulars, the evidence clearly indicates that the Michael Maher who died in Seattle, and whose estate is the subject matter of this proceeding, was the Michael Maher who was born to William and Mary Maher, in Clashagad, Ireland, during the year 1865. The records of births and baptism of other of the Maher children show discrepancies, several of the baptisms as recorded preceding the record dates of birth. Considering the whole record, we are of the opinion that the identity of the decedent was satisfactorily shown.

The administrator, M. G. Schmidt, testified that he met Mr. Maher about 1930, when Mr. Schmidt was employed in a bank in Georgetown, a suburb of Seattle; that Mr. Maher opened a savings account under the name of "M. C. Maher." Why he adopted the middle initial "C," does not appear. September 17, 1928, he registered as a voter, signing his name Michael Maher. The fact that he later opened a bank account as M. C. Maher is entirely immaterial. The identity of the Michael Maher who came to America in the summer of 1886 with the Michael C. Maher whose estate is now before us is positively established.

The fact that Mr. Maher, over a period of many years, failed to communicate with his brothers and

sisters, is entitled to consideration, but should not be given undue importance.

Appellant cites the opinion of this court *In re Miller's Estate*, 87 Wash. 64, 151 Pac. 105, in which this court affirmed a decree of escheat entered in a probate proceeding. In the case cited, the trial court and this court held that a claimant had not produced evidence showing that he was an heir at law of a decedent. Each case must depend upon its own facts, and in the case at bar the trial court held, and we are convinced rightly, that respondents have sustained the burden of proof in establishing that they are heirs at law of Michael Maher, deceased, and entitled to receive his estate.

Appellant urges that, since respondents did not establish their claims within eighteen months from the date of the issuance of letters of administration, a decree of escheat should be entered. Rem. Rev. Stat., § 1357 [P. C. § 9878], provides:

"Such estates shall be administered and settled in the same manner as other estates. If at the expiration of eighteen months after the issuance of letters of administration no heirs shall have appeared and established their claim thereto, the court having jurisdiction of such estate shall render a decree escheating all the property and effects of such decedent to the state of Washington."

In view of the circumstances of the case, and the fact that much time was required in procuring the necessary evidence, it cannot be held that respondents failed to act with reasonable diligence. This court, *In re Smith's Estate*, 179 Wash. 287, 37 P. (2d) 588, construed the section of the statute above quoted, and held that the statute was not strictly one of limitation, but merely fixed a time "which must necessarily expire before the state may commence an action for a decree of escheat."

The section quoted was again considered by this court *In re Railsback's Estate,* 184 Wash. 42, 50 P. (2d) 934, in which the opinion *In re Smith's Estate, supra,* was referred to with approval. In the case at bar, respondents' claim is not barred by lapse of time.

According to the evidence introduced by respondents, decedent had a brother, Vincent Maher, who has not been heard from for very many years. Upon the record as made, the court having obtained jurisdiction to distribute the estate, and neither Vincent Maher nor any person claiming to represent him having appeared, the court was justified in distributing the estate to the claimants who did appear and establish their relationship to the decedent.

Finding no error in the record, the decree appealed from is affirmed.

STEINERT, C. J., MAIN, MILLARD, ROBINSON, GERAGHTY, and SIMPSON, JJ., concur.

HOLCOMB, J. (concurring)—I heartily concur in the decision by the majority affirming the decree of the lower court, but dissent from that part of the decision dismissing the appeal of the administrator.

The position of the administrator is doubtless concurrent with that of the state, and his interest was and is to have legally determined the proper distribution of the estate.

The record shows that, on August 17, 1937, the trial court made an order, which was entered, authorizing the administrator to appeal from the decree of distribution entered on July 22, 1937. On September 8, 1937, the trial court vacated its order authorizing the administrator to appeal, which was error.

The administrator, in good faith, had forthwith given notice of appeal on August 17th, in compliance with the authorization of the trial court. It was filed on August

24, 1937. The jurisdiction of the trial court had therefore terminated with respect to giving the administrator the right to appeal, and it had no power to vacate that order.

In *In re Sullivan's Estate,* 48 Wash. 631, 94 Pac. 483, the opinion was written by Hadley, C. J., and concurred in by Mount, Dunbar, Fullerton, Crow and Rudkin, JJ.; or all of the judges but Root, who had disqualified himself. It was there distinctly held:

"As administrator he has an appealable interest, to the end that it is his duty to guard against the error of a distribution without some ample provision for all known obligations of the estate."

It was no more the duty of the administrator, as administrator, in that case to "guard against the error of a distribution without some ample provision for all known obligations of the estate" than in this.

I do not agree that the *Sullivan's Estate* case, *supra,* was correctly construed in *In re Tucker's Estate,* 116 Wash. 475, 199 Pac. 765, to the effect:

". . . that the appeal was there entertained, not because of any supposed interest of the administrator in who should take under the decree of distribution, but solely upon the ground that he should preserve the estate until provision was made for the payment of all known obligations, . . ."

The law as stated in the *Sullivan's Estate* case, *supra,* should remain fixed.

In all other respects, I concur with the majority decision.

BLAKE, J. (dissenting)—Summing up the evidence in *In re Miller's Estate,* 87 Wash. 64, 151 Pac. 105, Judge Ellis said: "It is barely sufficient to raise a conjecture that possibly the claimant might be a relative of the decedent." To my mind, the statement might well be made of the evidence in this case.

As I read it, the testimony of claimants amounts to nothing more than reiteration of facts gleaned from decedent's declaration of intention to become a citizen of the United States. True, claimants established the fact that they had a brother by the name of Michael Maher. But he was born March 29, 1865, while decedent, at least twice, averred under oath that he was born January 8, 1864. The fact that decedent and claimants' brother were both named Michael Maher is not at all persuasive of their identity, for it appears from the record that there was another child of that name born in the county at about the same time as claimants' brother. That *Maher* was a common family name in King's county is attested by the fact that the *maiden name* of claimants' mother was Mary *Maher*.

The attempt of claimants to identify decedent as their brother is, to say the least, naive. Typical of the testimony is the following statement of Mary [Maher] Hessian:

"I believe my brother Michael to be identical with Michael C. Maher who died at Seattle on 20th April, 1934, for the following reasons, namely, that he was born in Clashagad, King's County, Ireland, in or about the year 1864; that he immigrated to the United States of America from Ireland in or about the year 1886; that he was last heard of in America."

The claimants all admit that their brother Michael was never heard of, or from, for more than forty-eight years.

Believing that the evidence does not raise a well grounded suspicion that claimants are the heirs of decedent, I dissent.