[No. 16170.    Department Two.    March 30, 1921.]

## G. KEMPF, *Appellant,* v. MINNIE MICHELBACH, *Respondent.*[1]

DEEDS (21)—DELIVERY—EFFECT—RETURN BY GRANTEE.  The surrender of an unrecorded deed to the grantors with an agreement for its destruction does not effect a reconveyance of title from the grantee to his grantors.

SAME (21).  A grantee who voluntarily surrenders an unrecorded deed and procures its destruction, though he does not thereby reconvey title, places himself in a position, in view of the statute of frauds, where he cannot set up title in himself as against a subsequent grantee of the parties to whom he had surrendered his deed.

COURTS (51)—PROBATE JURISDICTION—TITLE TO PROPERTY.  A decree of distribution in probate does not create a title but only declares who has acquired the title of the deceased.

Appeal from a judgment of the superior court for Lincoln county, Sessions, J., entered July 28, 1920, in favor of the defendant, in an action to quiet title.  Affirmed.

*Cordiner & Cordiner,* for appellant.
*Freece & Pettijohn,* for respondent.

TOLMAN, J.—Appellant, as plaintiff below, brought this action to quiet title to certain real estate situated in Lincoln county, Washington.  In his complaint he alleges that he is the owner of the real estate in ques-

[1]Reported in 196 Pac. 661.

7—115 WASH.

tion by fee simple title; that he has been lawfully seized and possessed of the same for more than ten years last past; that he is entitled to the possession thereof, and that the defendants claim some right, title or interest therein adverse to him, which claims are made without right, and are subordinate and inferior to his title. The respondent, Minnie Michelbach, appeared separately, and in her answer to the complaint pleaded ownership of a certain portion of the real estate in question, setting up that it had been conveyed to her by warranty deed executed May 23, 1914, by Herman Zunker and Emma Zunker, husband and wife. She further alleged that appellant had no right, title or interest in and to that portion of the real estate so deeded to her; that, because of his conduct and actions, he is now estopped from claiming any interest therein, and asked the court to quiet her title thereto as against the claim of the plaintiff.

The facts, as they appeared upon the trial below, are not greatly in dispute, and as admitted or fairly established by the testimony, they are substantially as follows:

In 1911, the appellant, then a married man, purchased from Herman Zunker and his wife the real estate now in dispute, paying therefor the sum of $3,500, the full agreed purchase price. Mr. and Mrs. Zunker thereupon executed and delivered to appellant a deed to the property, duly acknowledged, purporting to transfer to appellant the full title. At the time of this transaction, appellant's wife was ill, and was later found to be insane, and committed to one of the state's hospitals. The deed was not recorded, but remained in appellant's possession. The respondent, Minnie Michelbach, is a daughter of the appellant, and at the time of the subsequent deeding of this property to her

by the Zunkers, was a widow, residing with her father, and she, with a younger sister, kept house for the father and assisted him in operating the farm, which included the land now in dispute. For many years prior to her marriage, respondent had lived with her father on the farm, working out of doors, performing all kinds of manual labor, and assisting him much as a man would have done. Appellant has two other children, a daughter, who had been married for some years, and a son, who no longer lived at home or formed a part of his immediate family.

In May, 1914, appellant stated to respondent and to her younger sister that they had done more for him and their mother than the other two children, and he wanted them to have the eighty acres of land which is the subject of this controversy; that, since the Zunker deed, which he then held, had not been placed of record, he would have Mr. and Mrs. Zunker execute a deed direct to the two daughters, conveying to each a half interest. Appellant did go to the Zunkers and advise them that his daughters were becoming dissatisfied at home, and it would be necessary for him to do something to keep them with him, and that it was his desire and intention to give them the eighty acres of land which had theretofore been deeded to him by the Zunkers. He thereupon requested the Zunkers to execute a new instrument of conveyance direct to the daughters, explaining that the former instrument had not been recorded, and by superseding it with the new instrument he would save the expense of the additional transfer. At first, Mr. and Mrs. Zunker were unwilling to execute another deed, but, at appellant's request, they met him and the daughters at the office of an attorney, where the matter was explained to them, a new deed to the daughters executed and delivered, and

the former deed, running to appellant, was surrendered to the Zunkers, and·they were advised that they might do with it as they wished, and were at liberty to destroy it. The Zunkers took the old deed, kept it until about the year 1919, when they destroyed it. ·

About the year 1915, appellant's wife died, leaving a non-intervention will, by which, after giving nominal bequests to each of·her four children, she devised all the rest·of her property to the. appellant. The will was admitted. to probate in 1915, and at the conclusion of the proceedings, the property was distributed as in the will provided. Respondent also offered testimony to show that it was agreed between·appellant and his daughters that appellant should remain in possession of the real estate so deeded to them during· his lifetime, or so long as he cared to farm it, provided that he would pay the. taxes and keep up the property. The younger daughter later reconveyed her one-half interest in the property in dispute to appellant, and thereafter appellant requested respondent also to reconvey, which she refused to do, claiming that the property had been freely given to her and she intended to retain it. About this time appellant sold his farm lands, including in the contract of sale the eighty acres in question. The purchaser had the abstract examined and found that the record title to an undivided one-half interest in this eighty-acre tract was in the respondent, whereupon appellant requested his younger daughter to write to respondent, who in the meantime had remarried and removed to Montana, explaining to her the facts regarding the sale, asking her to sign· a deed conveying her interest, and promising that, as soon as things were straightened out, she would get one of the purchaser's notes representing her interest in the sale price. There is also evidence tending to· show that,

when the purchaser discovered respondent's interest in the land, appellant asked him to negotiate direct with the respondent for the purchase of her interest, but later withdrew this consent and undertook to make a settlement himself, without success.

In the present action appellant seeks a decree establishing his ownership and denying respondent any interest in the property. From a judgment denying him relief as against respondent, appellant brings the case to this court on appeal.

Appellant contends that, upon the execution and delivery of the deed by the Zunkers in October, 1911, to appellant, the title to the land in controversy was thereby vested in the community consisting of appellant and his wife, and that the only way the community could be divested of the title would be a deed duly executed and acknowledged by appellant and his wife, and that the mere surrender of the first deed to the Zunkers did not reconvey title to them, and such surrender was a nullity and of no effect; that appellant's wife, being then mentally incompetent and confined in the asylum, in any event, the husband's act in surrendering the deed to the Zunkers was void as to her, and that, therefore, the Zunkers, having parted with their title in 1911, there having been no revesting of title in them in the meantime, their deed, under which respondent now claims, executed in 1914, conveyed nothing.

Whatever the legal effect of the transaction set forth, it seems clear under the evidence that appellant intentionally surrendered his deed with the full purpose that a new deed from his grantors to his daughters should vest title in them. It may be assumed that the first deed vested title in appellant and his wife as their community estate, and that its redelivery to the

grantors, and the subsequent destruction by them, did not effect a reconveyance of the title, though there are some authorities to the contrary; yet, even so, may appellant now assert rights under an instrument which he voluntarily surrendered and caused to be destroyed? The general rule in such cases seems to be as follows:

"The first question to be noticed has reference to the original transaction between Dunbar and Montague. The former executed and delivered to the latter a deed of conveyance of the undivided one half of certain lands, now embraced in the limits of the city of Milwaukee; and after the making of this deed, Dunbar purchased from Montague an undivided one-half of the interest in the lands which he had previously conveyed to Montague. The deed from Dunbar to Montague not having been recorded, as the statute upon the subject of conveyances of real estate required, it was agreed between them that this deed should be returned to Dunbar and destroyed, and that a deed of an undivided one fourth of the lands should be executed and delivered by Dunbar to Montague, which was done, and the first deed was accordingly returned and destroyed.

"There is no doubt in our minds that the cancellation or destruction of a deed of conveyance of lands by the consent and agreement of the parties to it cannot operate to revest the title in the grantor. The execution and delivery of a deed of conveyance of these lands, as between the grantor and grantee, vested the estate in the latter; but the voluntary destruction of the instrument by the consent of the parties could not pass the estate back again, because the transmission of title to real estate, at the time of the original transaction, could only be by deed of conveyance in writing. The mere act of destroying the evidence of the title in Montague could not disturb the title itself, and so far as Dunbar was concerned, it was fully vested in his grantee. The general current of authority, English and American, sustains this view of the question. (citing cases.)

"But although the estate remains in the grantee as against the grantor, notwithstanding the voluntary destruction of the deed, yet we see no means by which, in view of the statute of frauds, and the rule of evidence created by that statute, the grantee in a deed of lands, who has voluntarily and without fraud or mistake destroyed his deed, can establish or prove his title.

"It is not like the cases of the loss of an instrument, or its destruction by accident or mistake, in either of which cases secondary evidence would be admissible, but it is an attempt to supply the place of written evidence of the transmutation of real estate, as required by the statute of frauds, by parol proof of the contents of a deed, which the party had by his own act voluntarily destroyed. In such a case, he is not at liberty to subvert the rule of evidence, and by his own volition, having placed the higher grade of proof beyond reach, insist that he is therefore entitled to introduce an inferior grade of proof, which the statute interdicts." *Parker v. Kane,* 4 Wis. 1, 65 Am. Dec. 283.

Among many cases holding to the same rule are, *Farrar v. Farrar,* 4 N. H. 191, 17 Am. Dec. 410; *Thompson v. Thompson,* 9 Ind. 323, 68 Am. Dec. 638; *Gugins v. Van Gorder,* 10 Mich. 522, 82 Am. Dec. 55; *Ames v. Ames,* 80 Ark. 8, 96 S. W. 144, 117 Am. St. 68.

This rule is, of course, to be applied only so far as to promote substantial justice, and to carry into effect a fair and lawful purpose, and nothing herein said should be construed as denying any of the many limitations which the courts have in proper cases, placed upon it. It could not, of course, be asserted against appellant's wife, if living, or those claiming under her, or against innocent third persons, but no such questions are presented here. Indeed, appellant now contends that, by the will of his wife, and the decree of distribution entered in the probate of her estate, her half of the community estate, including the particular

real estate here involved, became vested in him. That is true to the extent that, by the wife's will, he was placed in a position to make effective his acts theretofore taken with intent to vest title in respondent; but if, as against respondent, he, by the prior acts, put it beyond his power to assert title under the first deed, he now occupies the same position with reference to the wife's devised interest, which also is derived through the same first deed, which he voluntarily surrendered for the purpose of vesting title in respondent. Nor does a decree of distribution create a title in any event. It only declares who has acquired the title of the deceased. *In re Ostlund's Estate,* 57 Wash. 359, 106 Pac. 1116, 135 Am. St. 990; *In re Decker's Estate,* 105 Wash. 221, 177 Pac. 718.

There is some contention that respondent's rights are barred by the statute of limitations, but we find nothing in the evidence which will warrant such a holding.

The judgment of the trial court is affirmed.

PARKER, C. J., MAIN, MITCHELL, and MOUNT, JJ., concur.