Anton Smith died a resident of Seattle on April 18, 1932, without a will and leaving estate in King county. Upon the petition of a creditor, Louis T. Silvain was appointed, and on May 10, 1932, qualified, as administrator of the estate. An inventory was filed showing that the property of the estate consisted of cash, upon the filing of which an order was entered May 11, 1932, declaring an appraisal to be unnecessary.
Thereafter, no further proceedings were had of record in the estate until November 16, 1933. On that date, which was more than eighteen months after letters of administration were issued, the state of Washington, by its supervisor of the inheritance tax and escheat division, filed in the probate proceedings a duly verified petition for an order declaring the net estate to be escheated to the state of Washington, alleging in the petition that Anton Smith died without a will, a resident of King county, on September 18, 1932; that letters of administration had regularly been issued to Silvain; that the deceased left money in one of the banks of Seattle, and that
". . . no heirs have appeared and established their claims thereto, and your petitioner is informed and believes, andtherefore alleges the fact to be, that no heirs can be found toestablish claim of heirship. That a period of more than eighteen months has expired since the issuance of letters of administration herein, and that the estate of Anton Smith and the whole thereof has escheated to the State of Washington." *Page 289 
It does not appear that the petition was served on anyone, nor does it appear that any notice of any kind was given of the filing of the petition.
Thereafter, December 5, 1933, the administrator filed his duly verified final account and petition for distribution. It does not appear to have been served on anyone, nor was any notice given of it by order of court, or otherwise.
Thereafter, January 9, 1934, a verified petition on behalf of three persons alleged to be residents of Yugoslavia and heirs of the decedent, asking that the estate be awarded to them, was filed in the matter of the estate. This petition was not served on anyone, nor was any notice given of it by order of court, or otherwise.
Neither time nor notice was fixed or given for a hearing upon the final account or any of the petitions. However, on January 30, 1934, the administrator by his attorney, the supervisor of the inheritance tax and escheat division and his assistant, and the attorney for the petitioners claiming to be the heirs of the deceased, appeared in the probate department of the superior court and were given a hearing. Evidence was introduced with respect to the final account and petition of the administrator for a distribution of the property, and also the petition of those claiming to be the heirs of the deceased. The state offered no proof.
For the purposes of this appeal, the testimony given at the trial, in substance, was: That, early in the fall of 1932, the attorney for those claiming to be the heirs notified the administrator that he represented them, without giving their names, and asked that the filing of the final account be delayed pending further investigation on the part of the attorney. *Page 290 
On behalf of those claiming to be heirs, one Frank Perusich testified that he knew, and for sometime lived with, the decedent in this country, and that he came from the same section of Yugoslavia or Austria that the decedent came from; that decedent's old country or family name was Rezek; that some years ago, he wrote several letters (one of them a business letter) for the decedent to the decedent's relatives back in the old country; that decedent spoke to him quite often of his relatives. He further testified that he had seen two brothers of the decedent in Colorado.
For the purpose of identifying the decedent, and somewhat of his nativity and family tree, there was introduced in evidence, over the objections of the state, an original instrument designated a "Protocol," written in a foreign language, a correct translation of which is as follows:
 "DISTRICT COURT IN METLIKA "February 28, 1933
"Present: "Chief Justice Dr. Ivan Sirko "Recorder: Miss Drobniceva
"PROTOCOL
made in the hearing of deposition of Marko Petric from the village Bojanje House No. 34 concerning the identity of Anton Rezek from the village Bojanje House No. 6, who died in Seattle, Wash. on April 18, 1932 under the name of Anton Smith.
"Appears Marko Petric, 72 years old, of Roman Catholic faith, born and residing in the village Bojanje House No. 34 and upon being duly warned about the sanctity of oath, deposes and says:
"`I have known Anton Rezek during his childhood days, when he lived in Bojanje in the house No. 6. I also knew well his brother Martin, who died last year in their house No. 6 in Bojanje.
"`Said Martin Rezek told me, that some years ago he was with his brother Anton in Pueblo, Colorado, *Page 291 
and that one night his brother picked up all good clothes of his roommate with whom he lived and disappeared from there, after which he took i.e. adopted another name of Anton Smith. Under that name he lived mostly among the Germans and avoided the contact with his relatives.
"`Also one Joze Rezek, who died some years ago in the village Bojanje at house No. 41, had told me that once he saw and recognized Anton Rezek in San Francisco, when Anton Rezek was working in some hotel and he spoke to him, but Anton Rezek would not admit his real identity and pretended that he was not Anton Rezek even though Joze Rezek recognized him positively, because they were cousins and they knew each other very well.
"`I, too, was personally in America from 1894 to 1896 in Sunnyside, Utah, where I lived in the home of my relative Janez Vuksinic from Bozakoveg, and said Janez told me that before I came there he had one Anton Rezek from the village Bojanje at house No. 6 live in his house in Sunnyside and at that time he went under the name of Anton Smith and signed himself with that name using the name of Smith before his relatives, who knew him under his old name.
"`In view of the above there is no doubt but that Anton Rezek from the village Bojanje house No. 6 is identically the same person as Anton Smith.
"`As further proof of the foregoing is the fact, which is personally known to me, that about three years ago Anton Rezek wrote to his now deceased brother Martin Rezek from the village Bojanje house No. 6, to procure for him his (Anton's) birth certificate and at the time he wrote from Seattle, Wash.
"`My foregoing statement, I confirm under oath.
"`Read and approved. (signed) Marko Petric.'
"It is hereby certified that the above Marko Petric was duly sworn under oath that his above statement is true.
"(signed) Drobniceva (signed) Dr. Ivan Sirko Recorder Chief Justice. "(Seal of Dist. Court in Metlika) *Page 292 
"No. Preds. 145/26/33-1
"The authenticity of the signature of Dr. Ivan Sirko, chief justice in Metlika is hereby certified.
 "The Presidency of Dist. Court in Novomesto "March 15, 1933
"(Seal of Dist. Court) in Novomesto
"The authenticity of the above verified by the Emigration Bureau in Zagreb August 18, 1933.
"(Seal of Emigration Bureau) (signed) Quinz."
In admitting the written instrument in evidence, the court expressed doubt as to its admissibility, because, in legal effect, it appeared to amount to nothing more than an ex parte affidavit, although the court seemed to be satisfied of its authenticity.
No proof was offered by or on behalf of the supervisor of the inheritance tax and escheat division of the state.
At the conclusion of the hearing, an order was entered approving the final account of the administrator as to claims allowed by him and making an allowance as compensation for services of the attorney for the administrator, and further ordering and decreeing that the petition of the state of Washington to escheat said funds to the state of Washington be, and the same is, denied; and upon the court's own motion, it was ordered that depositions be taken in Yugoslavia to be filed in the case to assist the court in determining the names and relationship of the heir claimants, the expense of taking such depositions to be taken out of the estate.
The supervisor of the inheritance tax and escheat division has appealed from the order entered by the trial court, above referred to. The assignments of error are:
"(1) The court erred in refusing to enter a decree escheating the property to the state of Washington; *Page 293 
(2) the court erred in dismissing the petition of the state of Washington to escheat the property of the estate; (3) the court erred in directing depositions to be taken to Yugoslavia at the expense of the estate."
On its appeal, the state relies on Rem. Rev. Stat., §§ 1356 and 1357 [P.C. §§ 9877, 9878] (Chapter 133, Laws of 1907, p. 253, §§ 1 and 2), as follows:
"§ 1356. Whenever any person possessed of any property within this state shall die intestate leaving no heirs, such property shall escheat to, and the title thereto immediately vest in the state of Washington, subject, however, to existing liens thereon, the payments of decedent's debts, and the expenses of administration.
"§ 1357. Such estates shall be administered and settled in the same manner as other estates. If at the expiration of eighteen months after the issuance of letters of administration no heirs shall have appeared and established their claim thereto, the court having jurisdiction of such estate shall render a decree escheating all the property and effects of such decedent to the state of Washington."
[1] The main contention of the state is that, because the purported heirs did not "appear and establish their claim within eighteen months after letters of administration were issued," a decree of escheat should be entered. But what right has the state to such relief under the record in this case and under these statutes, as heretofore construed? It is plain the statute deals with property of a definite kind or class. It speaks only of property within this state possessed by a person who dies intestate, leaving no heirs. Until it is shown that the property in question is that kind of property, there is nothing to escheat, no title to vest in the state.
Indeed, in its petition in this case, the state makes, among others, the necessary, indispensable allegation *Page 294 
"that no heirs can be found to establish claim of heirship." The general rule is applicable to the effect that the proof must be as broad as the allegation. There is here no proof whatever to sustain that allegation. At the conclusion of the testimony above referred to on behalf of the administrator and of those claiming to be heirs, the trial court, addressing the representative of the state, inquired: "You are offering no proof, I suppose?" to which the answer was: "No."
The primary inquiry and burden in these cases rest upon the state. Such has been the uniform holding in this state. They have not been met in this case. In Territory v. Klee (1890), 1 Wn. 183,23 P. 417, the appellant (territory) claimed title to the land in question by escheat from one who died intestate, and, among other things, the court said:
"The only law, in our statutes, on the subject of escheats is contained in § 3302, sub. 8 of the code, which is as follows: `If the decedent leaves no husband, wife or kindred, the estate escheats to the territory for the support of common schools in the county in which the decedent resided during his lifetime or where the estate may be situated.'
"In order, therefore, to recover in this action, appellantmust allege and prove that Charles Gilbert was the owner of theland at the time of his death, and that he left no wife orkindred." (Italics ours.)
This burden is imposed upon the state because of the presumption that one dying leaves heirs capable of inheritance. In 1915, after the passage of the statute the state relies on in the present case, the case of In re Miller's Estate, 87 Wn. 64,151 P. 105, was decided. It was an appeal from a decree of escheat. The decedent was a bachelor, and, no heirs appearing,an advertisement for heirs was had by order of court. A number claiming to be heirs appeared in the cause and waged the contest. In that case, the court said: *Page 295 
"It is true that the burden in the first instance rests upon the state to overcome by competent evidence the presumption that the decedent left heirs capable of inheritance. But this presumption is not so broad, nor the burden so onerous, as counsel seem to assume. While there is a presumption that there is somewhere someone next of kin to every decedent, there is no presumption that any particular persons are his next of kin or that his next of kin are ascertainable. The state's burden is met when, in addition to proof of the actual death, nonmarriage and intestacy of the propositus, it has been shown that, afterdiligent search and inquiry, the state has been unable to findthat he left ascertainable heirs. Any other rule would render an escheat impossible by making the presumption that there are next of kin to every intent an irrefragable presumption. When the state has shown these things, it has established prima facie
the escheat of the property." (Italics ours.)
Then, further construing the statute, if one appear claiming to be the next of kin, it is said, in substance, that he must show, not simply that the decedent left heirs, but that he, the claimant, is the next of kin. In this respect, the court, immediately following the above quoted portion of the opinion, said:
"The burden is then upon a particular claimant to prove, by the ordinary rules and competent evidence, that he is in fact the next of kin. This is not shifting the burden of proof, but is a mere progress of proof directed to an independent issue, the affirmative of which is in the nature of the case at all times upon the claimant of the property. He must prove his title. [Citing cases.]"
It may be doubted, though we think it unnecessary to decide in this case, if the appellant is entitled to raise the eighteen month provision here, because the appellant has not made, nor attempted to make, a prima facie case showing that the property in question is subject to escheat, or that the state has any interest whatever *Page 296 
in it. This provision of the statute is likened by the appellant to a statute of California (adopted by a number of other states the decisions of whose courts are cited in appellant's list of authorities), to the effect:
"If a non-resident alien takes by succession, he must appear and claim the property within five years from the time of the succession or be barred. . . ."
Discussing this statute, the supreme court of California, inIn re Pendergast's Estate, 143 Cal. 135, 76 P. 962, said:
"They [statutes] clearly imply that upon the death of the deceased the estate vests as a conditional estate in the non-resident alien heir, subject only to the contingency that if he fails to appear and claim the same within five years his right ceases, and the property then vests in the state, not strictlyby escheat for want of heirs, but by virtue of the effect of the statute. (Lyons v. State, 67 Cal. 384; State v. Smith,70 Cal. 156; People v. Roach, 76 Cal. 296)." (Italics ours.)
In State v. Smith, 70 Cal. 156, 12 P. 121, cited in thePendergast case, the court, in construing this California statute, held it to be a statute of limitation and not an escheat statute. It imposes no burden upon the state "in the first instance" to show that the property was for any reason subject to escheat, the whole burden in every respect being upon the non-resident alien heir to commence his action within the time limited by the statute.
[2] There are two reasons why the eighteen months' provision in our statute should not be literally construed and applied against those claiming to be heirs, under the record in the present case. First, while it is the expressed policy of the statute that property shall escheat where there is no will and no heir, we have declared, in construing the statutes, that *Page 297 "it is not the policy of the state to absorb private property ifthe legal heirs of a decedent are discovered." In re Sullivan'sEstate, 48 Wn. 631, 94 P. 483, 95 P. 71; In re Miller'sEstate, 87 Wn. 64, 151 P. 105. Second, it is to be observed that there is some apparent conflict in the terms of this statute compared with other applicable statutes. In § 1357 of the code, hereinbefore set out in full, immediately preceding the clause with respect to the time limit of eighteen months, in a complete sentence, it is declared: "Such estates shall be administeredand settled in the same manner as other estates."
When the present escheat law was passed in 1907, the legislature was, of course, cognizant of the fact that one of the manners, applicable in all cases, to administer and settle other estates was to give notice to creditors to present their claims within one year (now six months under the probate code of 1917 [Laws of 1917, p. 642, Rem. Rev. Stat., § 1371 (P.C. § 9929) etseq.]), and as soon thereafter as convenient and reasonable to close the estate upon legal notice published and posted of the time and place for hearing the final account and petition for distribution of the property of the estate; at which hearing, upon due proof of and publishing and posting of notice as required by order of court, all interested parties might, and were required to, appear and be heard. It was, and still is, the common practice that the hearing upon the petition to distribute the property is the appropriate time at which the court shall take testimony and determine who the heirs of a decedent are.
The escheat statutes do not say that such estates shall be administered and settled, except as to time, in the same manner as other estates, but simply that they shall be administered and settled "in the same manner as other estates." There is a blending of these several *Page 298 
procedural provisions in the same act, which necessarily embrace still other probate statutes. They must all be construed together and harmonized, understanding at all times that the legislature did not intend by the escheat statutes to deprive anyone of property to which he is entitled by inheritance. They do not mean to shut out one who in good faith appears at any time before the court in the ordinary procedure and upon notice proposes to determine whether the property shall escheat or be distributed to heirs. This statute, as heretofore construed, is not strictly a statute of limitations, but it fixes a time which must necessarily expire before the state may commence an action for a decree of escheat — the practice followed by the state in this case.
The state having failed to make any proof that the decedent did not leave any heirs, and such proof not otherwise appearing, no error was committed by the trial court in refusing a decree escheating the property at this time.
[3] A good faith showing to the satisfaction of the trial court having been made by those claiming to be heirs of the decedent prior to and without any notice of hearing the petition for distribution, or the one for escheat, we think the order of the trial court which, in legal effect, amounted to a continuance for the purpose of procuring further proof on the part of the purported heirs, was without abuse of discretion, and hence not erroneous.
The second assignment of error mistakes the record, as we understand it. The judgment does not dismiss the state's petition for an order of escheat, nor should it have done so. The state may have an interest in the property, and should be allowed to stay in the case until that matter is finally determined, for which purpose the order of the superior court should be considered *Page 299 
as a continuance, so that the state may be further heard with respect to its primary burden of proving there are no heirs of a decedent, and also to be heard with respect to the rights, if any, of those particular persons who claim to be heirs of the decedent.
[4] As to the third assignment of error, it is well taken. It was error to make an allowance out of the estate in favor of one for his expenses in attempting to prove that he is an heir and entitled to inherit. Such person is an adversary party, and must furnish his own expenses in the litigation.
The trial court will allow the parties such additional time as may be proper and reasonable to procure further proof.
The cause is remanded to the superior court, for further proceedings according to the views herein expressed.
BEALS, C.J., HOLCOMB, STEINERT, and BLAKE, JJ., concur. *Page 300