268

[No. 25674.    Department One.    August 22, 1935.]

*In the Matter of the Estate of* ALBERT GRALEY, *Deceased.*

THE STATE OF WASHINGTON, *Appellant,* v. ERNEST W. PLUM, *as Administrator, et al., Respondents.*[1]

*William H. Pemberton* and *Lyle K. Summers,* for appellant.

*Warren G. Magnuson, Wm. Hickman Moore,* and *David J. Williams,* for respondents.

BEALS, J.—Albert Graley died April 1, 1932, leaving as a portion of his estate a tract of land in King

[1]Reported in 48 P. (2d) 634.

county, an administrator of the estate having been appointed June 23, 1933. January 23, 1934, the administrator, in due course of probate, sold the real estate (subject to the lien of taxes, if any such lien existed), for the purpose of raising money with which to pay debts due from the estate, liens on the property, and the expenses of administration. The superior court entered an order under date February 28, 1935, adjudging, *inter alia,* that Albert Graley died intestate and without heirs within the intendment of the statutes of this state, and ordered the escheat of the estate to the state of Washington.

During the years 1932 and 1933, the assessor of King county listed the property on his rolls and duly assessed the same, pursuant to which assessment the county levied general taxes against the land for the years 1932 and 1933. In the course of the administration of the estate, the treasurer of King county was cited by the administrator to appear and show cause why the state of Washington should not take the property, pursuant to the order of escheat, free and clear from the lien of the taxes for the two years above referred to. The matter was heard before the superior court, the supervisor of inheritance and escheat division appearing and participating in the hearing on behalf of the state and objecting to the payment of the taxes by the administrator as a charge against the estate. The supervisor's objection was overruled, and the administrator was ordered to pay the taxes, from which order the supervisor has appealed.

Appellant contends that title to the real property vested in the state of Washington April 1, 1932, the date of Albert Graley's death, and that, from that date, the property was exempt from taxation; and that, as at the date of Mr. Graley's death no tax had become a lien on the property for the year 1932,

no lien could thereafter be created on account of the taxes for that or any succeeding year, and that the state, therefore, took the property free and clear of the taxes for the two years mentioned, and that no such taxes exist.

The fourteenth amendment to our state constitution provides, *inter alia,* that "property of the United States and of the state, counties, school districts and other municipal corporations . . . shall be exempt from taxation." The legislature subsequently enacted Rem. Rev. Stat., § 11111 [P. C. § 6882-7], the pertinent portion of which reads as follows:

"The following property, to the extent herein limited, shall be exempt from taxation: . . .

"Second: All property, whether real or personal, belonging exclusively to the United States, the state, any county or municipal corporation."

The pertinent portions of the act providing for the escheat of property to the state (Laws 1907, ch. 133, being §§ 1356, 1357, 1358 and 1362, Rem. Rev. Stat.) read as follows:

"Section 1. Whenever any person possessed of any property within this state shall die intestate leaving no heirs, such property shall escheat to, and the title thereto immediately vest in the state of Washington, subject, however, to existing liens thereon, the payments of decedent's debts, and the expenses of administration. [Rem. Rev. Stat., § 1356.]

"Sec. 2. Such estates shall be administered and settled in the same manner as other estates. If at the expiration of eighteen months after the issuance of letters of administration no heirs shall have appeared and established their claim thereto, the court having jurisdiction of such estate shall render a decree escheating all the property and effects of such decedent to the state of Washington. [Rem. Rev. Stat., § 1357.]

"Sec. 3. After any estate shall have been escheated as aforesaid, it shall be the duty of the administrator thereof, under the supervision and direction of the

court, to sell all the personal property, such sales to be made in such manner and upon such terms and conditions as the court may deem to the best advantage to the estate. The proceeds of such personal property shall be first exhausted before any real property shall be subjected to the debts of decedent, expenses of administration, or the satisfaction of liens thereon. [Rem. Rev. Stat., § 1358.]

. . . . . . . . . .

"Sec. 7. All escheats shall inure to and become a part of the permanent common school fund of the state, and all escheated real property shall be managed, sold and handled in the manner provided by law for the management, disposition and sale of the state common school lands. [Rem. Rev. Stat., § 1362.]"

Appellant relies upon the case of *State v. Snohomish County,* 71 Wash. 320, 128 Pac. 667, a case brought by the state for the purpose of cancelling certain tax certificates which had been issued against land which had been purchased by the state for public purposes. It appeared that the state purchased the real property in question on two different dates—May 8 and August 9, 1907—and that, July 1, 1909, the county treasurer issued certificates of delinquency against the property for delinquent taxes against the same for the years 1907 and 1908. This court stated the question to be determined as follows:

"Can real estate, in private ownership on March 1, 1907, but in public ownership when the taxes for that year were levied, be subjected to the payment of such taxes?"

It was held that the general tax laws of the state were presumed to operate upon private, not public, property; and that, in view of the announced public policy of the state, and in consideration of the statutes applicable to the question to be considered, the taxes for 1907 and 1908 never became valid liens

against the land which had been purchased by the state as above set forth. The trial court had sustained a demurrer to the state's complaint, and the judgment dismissing the action was reversed. The court concluded that under the law the tax for 1907 could not become fixed until the levy in October of that year, at which time the state owned the property, having acquired the same in fee simple, the county taxing officers having thereafter constructive notice that the title was in the state of Washington. The tax, therefore, never became a valid lien against the property.

An entirely different situation is presented by the facts in the case at bar. The property stood in the name of Mr. Graley. Even after an administrator of this estate was appointed, no one could know, until the expiration of the statutory period, whether or not heirs of the deceased would appear, entitled under the law to claim the property. Of course, the county assessor and treasurer were obligated to proceed regularly and levy taxes against the land, as required by law.

Appellant also relies upon the decision of the New York court of appeals, *In re Melrose Avenue*, 234 N. Y. 48, 136 N. E. 235, 23 A. L. R. 1233, in which it was held that, in case of an escheat of real property, the title vested immediately in the people, and that neither entry upon the land nor judgment of a court of competent jurisdiction was necessary to consummate title of the state under an escheat. The constitution of the state of New York contains the following provision relating to escheats:

"The people of this state, in their right of sovereignty, are deemed to possess the original and ultimate property in and to all lands within the jurisdiction of the state; and all lands, the title to which shall fail, from a defect of heirs, shall revert, or escheat, to the people." Const., Art. 1, § 10.

Apparently, under the statutes of New York, the attorney general, in proper cases, commences an action of ejectment to recover property which should escheat to the state because of defect of heirs, under the constitution. In case of vacant property and no known claimant, an action against "unknown claimants" is instituted. Under the constitutional provision above quoted, the New York court properly held that, in case of an escheat, the state acquired the same title, at the same time, and in the same manner, as would an heir at law or devisee under a will. In this state, the situation under our statutes is quite different from that discussed by the New York court in the case cited, and the decision of the court of the latter state, while entitled to careful consideration, is not directly in point.

This court has repeatedly stated the general principle that, upon the death of the ancestor, the title to his real estate vests immediately in his heirs, and in the case of *Kempf v. Michelbach*, 115 Wash. 193, 196 Pac. 661, it was said:

"Nor does a decree of distribution create a title in any event. It only declares who has acquired the title of the deceased. *In re Ostlund's Estate*, 57 Wash. 359, 106 Pac. 1116, 135 Am. St. 990; *In re Decker's Estate*, 105 Wash. 221, 177 Pac. 718."

In the case of *Parr v. Davison*, 146 Wash. 354, 262 Pac. 959, we cited the *Kempf* case, and, referring to the question then under discussion, said:

"Nor did the decree of distribution in her estate create a title. . . . The function of a decree of distribution is to declare the title which accrues under the law of descents, or under the provisions of a will."

These statements correctly define the purpose of a decree of distribution, and in a broad sense it is true that it is considered by the law that such an order does not create, but merely declares, a title. This is, of

course, in some instances a legal theory which is in fact untrue. A man dies, leaving an only child, who is his sole heir. The title to the real estate of the deceased vests immediately in that child. An administrator is appointed, and the probate of the estate continues in an orderly manner. No one within the jurisdiction knows of the existence of the child, and the child either does not know that his father has died, is unaware of the existence of the relationship, or for some reason does not care to claim the property. In due time, a brother of the deceased appears, claims to be the sole heir, proves his relationship, and, after due proceedings, the real estate is distributed to him. As matter of fact, the decree of distribution, which is due process of law and binding upon all the world (in the absence of fraud), actually divested the title of the child and vested title in the surviving brother. As we said in the case of *Parr v. Davison, supra,* in such a case, the decree of distribution declares the title, and it is, of course, presumed that it declares the title which actually had vested in the true heir on the death of the ancestor. In the supposed case, however, the legal assumption is, in truth, at variance with the actual facts of the case. The decree did declare an actual title and, in fact, initiated that title.

In the case of *United States Fidelity & Guaranty Co. v. Wooldridge,* 268 U. S. 234, 69 L. Ed. 932, 45 Sup. Ct. Rep. 489, 40 A. L. R. 1094, the court said:

"The doctrine of relation 'is a legal fiction invented to promote the ends of justice. . . . It is never allowed to defeat the collateral rights of third persons, lawfully acquired.' *Johnston v. Jones,* 1 Black, 209, 221."

In connection with the matter of inheritance and of escheats, the law indulges in several legal theories or fictions, which do "promote the ends of justice," un-

less it is attempted to give them a weight and verity beyond the statutory intention. Statutes frequently refer to the death of an owner of property "leaving no heirs." As matter of fact, everyone has somewhere a next of kin. As this court said, *In re Sullivan's Estate,* 48 Wash. 631, 94 Pac. 483:

"It is perhaps inconceivable that a human being may die leaving no heirs, no next of kin. Somewhere among men must be found his next of kin to whom the law of descent would carry his property. It is, of course, often impossible to prove who such may be, and in such cases the estate escheats. The state can maintain no claim if the next of kin show their right to inherit, as it is not the policy of the state to absorb private property if the legal heirs of a decedent are discovered."

It may be assumed that the legislature, by statutory enactment, may limit the degree of kinship without which a next of kin may not inherit. That is an entirely different question, and one with which we are not here concerned. When a statute refers to the death of a property owner without heirs or next of kin, it means that the heir or next of kin of the deceased is unknown and fails to present and maintain his claim or kinship, or lies without a statutory limitation.

This court, in considering the matter of an escheat, *In re Smith's Estate,* 179 Wash. 287, 37 P. (2d) 588, said:

"It is plain the statute deals with property of a definite kind or class. It speaks only of property within this state possessed by a person who dies intestate, *leaving no heirs.* Until it is shown that the property in question is that kind of property, there is nothing to escheat, no title to vest in the state. . . . The primary inquiry and burden in these cases rest upon the state. . . . This burden is imposed upon the state because of the presumption that one dying leaves heirs capable of inheritance."

In considering a somewhat similar problem, the supreme court of California, *In re Pendergast's Estate,* 143 Cal. 135, 76 Pac. 962, said:

"They [statutes] clearly imply that upon the death of the deceased the estate vests as a conditional estate in the non-resident alien heir, subject only to the contingency that if he fails to appear and claim the same within five years his right ceases, and the property then vests in the state, not strictly by escheat for want of heirs, but by virtue of the effect of the statute. (*Lyons v. State,* 67 Cal. 384; *State v. Smith,* 70 Cal. 156; *People v. Roach,* 76 Cal. 296)."

Rem. Rev. Stat., § 1356 [P. C. § 9877] *supra,* provides that, upon the death of a property owner leaving no heirs, "such property shall escheat to, and the title thereto immediately vest in the state of Washington." The following section gives the heirs of a decedent eighteen months after the issuance of letters of administration to appear and establish their claim. It provides that, if no heirs appear, or claims made are not established, the decree of escheat shall be rendered. As stated by the court of appeals of New York, *In re Melrose Avenue, supra,* it was formerly the general rule that the decree of escheat vested title in the state, and, until there had been an adjudication following an inquest of office, title did not so vest.

Here, we have conflicting claims presented by different branches of the state government—on the one hand, the claim of the county for general taxes; on the other, the claim of the supervisor on behalf of the common schools. Generally speaking, the claim of the state through a county for taxes is superior to other claims. The county officials must make the levy to meet the estimated county expenses. They cannot allow for a sinking fund to take care of property which may later escape taxation, and taxes which are thereafter removed from the rolls necessarily create a defi-

ciency, which later must be paid by other property. In this case, the county officials had no possible way of even guessing that the state would ever have any claim to the real property left by Mr. Graley. They could only proceed in an orderly manner to assess the same, as required by law.

The title which the state receives pursuant to a decree of escheat is by the statute made subject to the expenses of administration, all of which accrue after the death of the prior owner.

Of course, §§ 1356 and 1357 [P. C. §§ 9877 and 9878], Rem. Rev. Stat., *supra,* must be construed together. The first of the two sections provides for the escheat of the estate of one dying intestate and without heirs; the second section provides for the time and manner of the escheat. Considering the principles hereinabove discussed, and construing together the two sections last referred to, we are of the opinion that, in so far as the question here presented is concerned, the words "immediately vest in the state of Washington," as used in § 1356, can only refer to the date of the escheat as declared by the order entered pursuant to § 1357.

Of course, for certain purposes, the "doctrine of relation" might well be held to apply, but it should not, upon such a state of facts as is here presented, divert from the general treasury to a special fund the sum assessed against the estate's property by way of taxes for the years 1932 and 1933. The doctrine of relation is a good servant, but may be a bad master, and we decline to apply it, as we think unreasonably, to such a case as this.

Up to the last moment of the statutory period, an heir of the deceased may appear and maintain his right to the estate. The inchoate ultimate right of the

state always exists, but the instances in which it may be asserted are of infrequent occurrence.

We are satisfied, from a careful analysis of the statutes applicable to the situation here presented, that the title of the state of Washington to the property left by Mr. Graley, as declared by the decree of escheat, in so far as the general taxes for 1932 and 1933 are concerned, dates from the entry of the decree, and does not relate back to the date of Mr. Graley's death, so as to defeat the county's lien for the taxes above referred to.

The order appealed from is accordingly affirmed.

MAIN, TOLMAN, GERAGHTY, and STEINERT, JJ., concur.