Philip McGovern died in June, 1924, at Port Townsend. January 28, 1926, C.J. Flint filed a petition for letters of administration on McGovern's estate, alleging that McGovern was a resident of Port Townsend and left estate in Jefferson county subject to administration. After due notice, on February 10, 1926, an order was entered appointing Flint administrator of the estate. Due notice to creditors was given, and time for filing claims expired in August, 1926. An inventory was filed and appraisement had, showing the total value of the estate to be something more than eleven thousand dollars, consisting principally of bank deposits.
After the expiration of eighteen months, the administrator filed his final account and petition, showing that the "administrator made due search and inquiry to ascertain if said deceased left any known heirs at law, but none has been found or located." The administrator prayed for approval of his account and escheat of the residue of the estate to the state of Washington.
After due notice and hearing, the court, on October 14, 1927, entered a decree settling the account, and ordered "that the residue of the estate be escheated to the state of Washington, as provided by law." The decree having been complied with, the court, on February 15, 1928, entered an order discharging the administrator and exonerating his bond.
On November 28, 1933, the inheritance tax and escheat division of the state of Washington filed its petition in the same probate proceedings, showing that, at the time of McGovern's death, he had a savings account in The Bank of California, N.A., at Seattle. At the time the petition was filed, the account — principal and interest — amounted to more than ten thousand dollars. The prayer of the petition was that the estate be reopened and that the account be immediately *Page 170 
escheated to the state of Washington. On the same day, an order was entered in accordance with the prayer of the petition. In compliance with this order, the bank surrendered the account to the inheritance tax and escheat division of the state of Washington.
Again, on April 10, 1934, the inheritance tax and escheat division filed a petition in the probate proceedings, showing that, at the time of his death, McGovern had a savings account in the Olympia National Bank, at Olympia. At the time the petition was filed, the account — principal and interest — amounted to more than five thousand dollars. On the same day, the court entered an order escheating the account to the state of Washington.
On April 6, 1935, a petition was filed in the probate proceeding on behalf of Margaret Hughes and Mary Kennedy, who claim to be nieces of McGovern, praying that the order of escheat of April 10, 1934, be vacated. On September 27, 1935, a motion was presented in the probate proceedings, on behalf of Margaret Hughes and Mary Kennedy, to vacate the order of escheat of November 28, 1933.
On April 6, 1935, an original petition for letters of administration on the estate of Philip McGovern was filed in the superior court of Jefferson county on behalf of Margaret Hughes and Mary Kennedy. The estate upon which administration was sought consisted solely of the above described savings accounts with The Bank of California, N.A., and the Olympia National Bank.
On October 18, 1935, the court entered in the first probate proceedings orders vacating the orders of escheat entered November 28, 1933, and April 10, 1934. On the same day, an order was entered appointing an administrator on the petition filed on behalf of Margaret Hughes and Mary Kennedy. Also, on October 18, 1935, an order was entered denying a motion, made *Page 171 
on behalf of the state, to dismiss the application of Margaret Hughes and Mary Kennedy. From these four orders entered October 18, 1935, the state appeals.
Rem. Rev. Stat., § 1357 [P.C. § 9878], relating to escheated estates, provides:
"Such estates shall be administered and settled in the same manner as other estates. If at the expiration of eighteen months after the issuance of letters of administration no heirs shall have appeared and established their claim thereto, the court having jurisdiction of such estate shall render a decree escheating all the property and effects of such decedent to the State of Washington."
[1, 2] Construing this section, we have held that the state is not entitled to a decree of escheat until it is shown that, after diligent search and inquiry, no heirs can be found. In reSmith's Estate, 179 Wn. 287, 37 P.2d 588. In that case, it was also held that, before entry of a decree of escheat, the court might extend the time for claimants to establish heirship, notwithstanding more than eighteen months had elapsed since the issuance of letters of administration.
We have also held that dormant bank accounts can be escheated only through administration proceedings. In re Railsback'sEstate, 184 Wn. 42, 50 P.2d 934.
Furthermore, we have held that an administrator will not be permitted to plead a decree of distribution as res adjudicata
as to property which he intentionally failed to bring into the administration proceedings.
Now, the question is, do these decisions compel the vacation of the orders of escheat of November 18, 1933, and April 10, 1934, and necessitate administration on the savings accounts found in The Bank of California, N.A., and in the Olympia National Bank? We think not.
In re Railsback's Estate, supra, the court said: *Page 172 
"We have held that the rights of creditors to the assets of a deceased person is the principal reason for requiring official administration; and courts, therefore, sanction the disposition of the property of a decedent without the appointment of an administrator where it is certain that no debts are owing."
In Hill v. Young, 7 Wn. 33, 34 P. 144, the court held that, the rights of all possible creditors being barred by lapse of time, an heir could establish his interest in property by a suit in equity. It was specifically held that there was no necessity for administration. In Murphy v. Murphy, 42 Wn. 142,84 P. 646, it was held that, after a lapse of ten years, there was no necessity for administration, and that, upon the application of heirs, the court properly revoked letters, theretofore issued, cum testamento annexo.
From these authorities, we deduce that the mere discovery of the savings accounts here in dispute did not necessitate the opening of the old administration proceedings, nor the institution of the new. It is clear that heirs, if any, could have established their rights in the accounts by a suit in equity. Now, if the heirs could so establish their rights, why not the state? The general rule is that,
"In the absence of statute to the contrary the courts of law,. . . have jurisdiction of an inquisition, or other proceeding to establish or perfect an escheat." 10 R.C.L. 611.
As we have seen, § 1357 provides that "such estates shall be administered and settled in the same manner as other estates." This estate was so administered. It was so settled by the decree of October 14, 1927, approving the administrator's final account and declaring escheat of the estate. While it was proper to reopen the estate and bring in the subsequently discovered *Page 173 
bank accounts for administration, it does not follow that the probate proceedings were opened for all purposes. It certainly was not necessary to republish notice to creditors. That would be unnecessary for two reasons: First, it had once been done; and second, by reason of lapse of time, it is to be presumed, under the rule of Hill v. Young, supra, and Murphy v. Murphy,supra, there are no creditors.
Likewise, it could not be necessary for the state or the administrator to again prove due diligence and inquiry in search of heirs. That had been determined once for all in the decree of October 14, 1927. See In re Ostlund's Estate, 57 Wn. 359,106 P. 1116, 135 Am. St. 990. In that case, the court quoted with approval the following from Cunha v. Hughes, 122 Cal. 111,54 P. 535, 68 Am. St. 27:
"Upon an application for the distribution of an estate, the entire world is notified to be present at the hearing, and to make known their claims, if any they have, to the estate of the decedent or any portion thereof, and the decree of distribution becomes a judicial determination of their claim, which, unless reversed, set aside, or modified upon appeal, is conclusive of their rights, the same as is a final judgment in any other action or proceeding. By giving the notice in the manner prescribed by the statute, the court acquires jurisdiction over all persons entitled to assert any claim to the estate, and, whether they appear and present their claim for adjudication, or fail to appear and suffer default, the judgment is conclusive upon them. The decree of distribution becomes the measure of the rights of all claimants to the estate, and their rights are to be determined by the terms of this decree."
In the Ostlund case, it appeared that Mrs. Ostlund left a will devising all of the community property to her husband, without mentioning her children. A decree *Page 174 
entered upon due notice distributing the community estate to the husband was held binding on the children, notwithstanding the will was void as to them, and notwithstanding the statute providing that, upon the death of a person seized of lands, the title thereto shall vest immediately in his heirs or devisees.
In the case at bar, when it was shown that the savings accounts had been discovered and the estate was reopened, the court had jurisdiction only to do what it did do, namely, enter the orders of escheat of November 28, 1933, and April 10, 1934, escheating the accounts to the state of Washington. For it is to be remembered that Rem. Rev. Stat., § 1357 [P.C. § 9878], provides that,
"If at the expiration of eighteen months after the issuance of letters of administration no heirs shall have appeared and established their claim thereto, the court . . . shall render a decree escheating all the property and effects of such decedent to the state of Washington."
These decrees of November 28, 1933, and April 10, 1934, were obviously entered in conformity with the statute and with the rule laid down In re Smith's Estate, supra, requiring due search and inquiry for heirs. When the putative heirs appeared and laid claim to the estate, more than eighteen months had elapsed after the issuance of letters of administration and the administration was closed with decrees of escheat entered after showing of due search and inquiry for heirs.
The facts do not bring the case within the rule applied in theSmith case, supra, and stated in the Railsback case,supra, that,
"Even after the expiration of the eighteen months' period,the estate being yet open, an heir may maintain *Page 175 
his claim as against the state, . . ." (Italics ours.)
The orders appealed from are reversed.
MILLARD, C.J., BEALS, MAIN, and TOLMAN, JJ., concur.