[No. 30012. Department One. October 24, 1946.]

JAMES MEZERE et al., *Respondents,* v. HELEN FLORY et al.,
*Respondents,* MATTIE BLACK et al., *Appellants.*[1]

[1]Reported in 173 P. (2d) 776

*Reed & Luckerath,* for appellants.

*Clarence S. Lind,* for respondents.

MILLARD, C. J.—The marital community composed of Claude Ruyle and Myrtle Ruyle owned, when the latter spouse died intestate in King county February 10, 1938, lots 11, 12, and 13, block 30, Burien Lake View Tract No. 5, in King county. The surviving spouse immediately conveyed to the four surviving children, all of whom were minors, his interest in the real property just described.

Mable Bragg, the duly appointed and qualified administratrix of the estate of her deceased daughter, inventoried as assets of the estate furniture and incidentals of the value of twenty-five dollars and the above-described real property, appraised at one thousand dollars. Two claims were filed in the estate: one for incidentals in the amount of twenty-five dollars; one by Mable Bragg, the administratrix, for disbursements made in care and maintenance of decedent, medical and funeral expenses, taxes on real estate, care of the children of decedent, etc., in the amount of $1,899.70.

Administratrix Bragg prayed that, as her claim exceeded the entire value of the estate, distribution of the estate be made to her in satisfaction of her claim. On August 15, 1940, an order was entered approving the final account of Mable Bragg and awarding to her the real estate described above in payment of her claim. No guardian or guardian *ad litem* represented the minor children of the decedent, nor was there any proof of publication of the notice of hearing of the final account and petition for distribution.

June 12, 1940 (one month and six days before she filed her final report and two months prior to approval of her final account in the Ruyle estate), "Mable Bragg, a widow" entered into a real estate contract with James Mezere, then unmarried, for sale to the latter of the real property de-

scribed above. The purchaser paid one hundred dollars at the time of the execution of the contract and obligated himself to pay the remainder of the purchase price of $1,550 in monthly installments of $18, with interest at six per centum per annum on deferred payments. Nowhere in the instrument is there aught to put one on notice that Mable Bragg is not the owner of the property she contracted to sell to James Mezere.

Mable Bragg died intestate February 8, 1942. The real property described above, on which there was a balance of $1,144.07 due under the terms of the contract of Mable Bragg with James Mezere, was inventoried in the estate of Mable Bragg, deceased, and by decree entered September 29, 1942, distributed, as follows, to the heirs of Mable Bragg:

One third to G. L. McKinley, son of Mable Bragg; one third to Mattie Black, daughter of Mable Bragg; one twelfth to Helen Flory, granddaughter of Mable Bragg and daughter of Myrtle Ruyle; one twelfth to Betty Kravitz, granddaughter of Mable Bragg and daughter of Myrtle Ruyle; one twelfth to June Ruyle and one twelfth to Russell Ruyle, minors, grandchildren of Mable Bragg and children of Myrtle Ruyle.

The decree of distribution in the Bragg estate recites that the minors appeared by their duly appointed guardian *ad litem,* R. C. Gray; that due and legal notice of hearing of the final account and report and petition for distribution was given in the manner and form as required by the statute; and that no exceptions or objections were made to or against the final account and report. No appeal was taken from that decree.

September 28, 1944, James Mezere and wife, who were informed by their grantee that an investigation disclosed the title to the property described above "had a cloud on it," commenced an action against the four children of Myrtle Ruyle, deceased, the daughter of Mable Bragg, deceased, and the executrix of the estate of the deceased son of Mable Bragg, deceased, for determination of the claims of defendants to balance due under real estate purchase contract of James Mezere with Mable Bragg and to quiet title in

plaintiffs to the property in question upon payment into the registry of the court of the amount due under the contract. The theory of the answer and cross-complaint of the four children of Myrtle Ruyle, deceased, was that, upon the death of their mother, title to the real property in question vested in them, and that the decree awarding the property to Mable Bragg was void; therefore, the son and daughter of Mable Bragg never acquired any interest in or to the property. Decree was entered quieting title, subject to certain liens in favor of plaintiffs and the minors' guardian *ad litem,* in the four children of Myrtle Ruyle, deceased. Appeal therefrom is prosecuted by the daughter of Mable Bragg, deceased, and the administratrix of the estate of the deceased son of Mable Bragg, deceased.

Counsel for appellants contend that, in the probate of the estate of Mable Bragg, deceased, the court had jurisdiction of the subject matter of the present controversy and had jurisdiction of all of the heirs (son and daughter of Mable Bragg, and the four children who were Mrs. Bragg's grandchildren and Myrtle Ruyle's children, two of whom were properly represented as minors by their guardian *ad litem*) of Mable Bragg, deceased; therefore, as no appeal was taken therefrom, the decree of distribution entered in that proceeding September 29, 1942, is *res adjudicata* of the rights of the four children of Myrtle Ruyle as well as the rights of the two children of Mable Bragg.

The trial court correctly concluded that the order entered August 15, 1940, approving the final account and distributing the whole of the estate of Myrtle Ruyle, deceased, including the real property in question, to Mable Bragg, was void and conveyed no title or interest in the property to Mable Bragg, for the reason that no proof of publication of notice of hearing of the final account and petition for distribution was on file. The court is correct for the further reason that the minor children of the deceased Myrtle Ruyle were not represented in that proceeding by a guardian or a guardian *ad litem.*

The statutory provision (Rem. Rev. Stat., § 187 [P.P.C. § 3-31]) for the appointment of a guardian for minors is mandatory.

"If the court had jurisdiction over the estate, it was also necessary that it acquire jurisdiction over the persons of the minor heirs before proceeding to divest them of their title, because the statute expressly required the minor heirs to be represented. They could not waive this right, and the court could not waive it by noncompliance with the statute. *Fiske v. Kellogg,* 3 Or. 503. The case of *Bloom v. Burdick,* 1 Hill 130, 37 Am. Dec. 299, is in point upon this question. It was there said, at page 139:

" 'The surrogate undoubtedly acquired jurisdiction of the *subject matter,* on the presentation of the petition and account; but that was not enough. It was also necessary that he should acquire jurisdiction of the *persons* to be affected by the sale. It is a cardinal principle in the administration of justice, that no man can be condemned or divested of his right, until he has had the opportunity of being heard. He must, either by serving process, publishing notice, appointing a guardian, or in some other way, be brought into court; and if judgment is rendered against him before that is done, the proceeding will be as utterly void as though the court had undertaken to act where the subject matter was not with its cognizance.' When the statute required the appearance of the minor heirs by guardian *ad litem* before the court should make the order of sale, it was necessary for such appearance, even if the proceedings were *in rem.* The order of sale was therefore without the authority of law, and was void as to the minor heirs. *Wallace v. Grant,* 27 Wash. 130, 67 Pac. 578." *Ball v. Clothier,* 34 Wash. 299, 75 Pac. 1099.

It is clear that Mable Bragg had no interest in or to the real property in question at the time she entered into a contract to sell same to James Mezere, and that she had no interest or title in or to the property at the time she died.

The position of appellants, whose title derives from Mable Bragg, who had no title to the property in controversy, that they acquired title to a two-thirds interest in the property by the decree of distribution in the estate of Mable Bragg, is untenable.

█ Title to the real estate vested in the heirs—her four

children—of Myrtle Ruyle upon her death. The children's title to that property could not vest, as stated above, in Mable Bragg by virtue of the void decree of distribution entered August 15, 1940, in the Ruyle probate proceeding.

■ The inventorying as an asset in the estate of Mable Bragg, deceased, of real property belonging to the heirs of her deceased daughter, did not create title.

"The primary purpose of an inventory is to furnish a list of the property which appears to belong to the decedent and a valuation thereof. It is made on an *ex parte* investigation and clearly binds no one. Where no exceptions are filed to it, there is no judicial inquiry at all. It is only when exceptions are filed and the jurisdiction of the Probate Court is invoked to inquire into the validity of the schedule of property that the proceeding takes on the character of litigation." *Scott v. Mofford*, 64 Ohio App. 457, 28 N. E. (2d) 947.

■ The function of the decree of distribution is to determine heirship and to distribute to the heirs entitled thereto *only such interest* as the decedent has at the time of his or her death. Manifestly, if the decedent does not own the property, which is the situation in the case at bar, the decree of distribution does not pass title.

"The decree of distribution distributed only such title had at the time of her death. If the testatrix does not own the property, obviously the decree of distribution passes no title, . . . ." *Pometti v. Laraia*, (Calif.) 25 P. (2d) 857.

"Neither the administration of the estate, nor the distribution of the property thereunder, adds or creates any title or gives any new title." *Reichard v. Chicago, B. & Q. R. Co.*, 231 Iowa 563, 1 N. W. (2d) 721.

In *Parr v. Davison*, 146 Wash. 354, 262 Pac. 959, the widow of George W. Parr brought an action to quiet title to certain land in Whatcom county. George W. Parr, at the time of his death, owned the property in question subject to a life estate in his mother, who devised the subject matter of the controversy to defendants. The decree of distribution in the estate of George W. Parr's mother, who died in 1918, followed the terms of her will. Six years later, the son (George W. Parr) died, whereupon his widow claimed the

real estate. The devisees under the will of George W. Parr's mother pleaded as a defense the decree of distribution. In affirming the judgment in favor of plaintiff widow we said:

"Nor did the decree of distribution in her estate create a title. *Kempf v. Michelbach,* 115 Wash. 193, 196 Pac. 661; *In re Ostlund's Estate,* 57 Wash. 359, 106 Pac. 1116, 135 Am. St. 990. The function of a decree of distribution is to declare the title which accrues under the law of descents, or under the provisions of a will. Here, as to the property involved in this action, upon the death of Rosannah Parr, no title or interest accrued by either of those means. Nor was George W. Parr bound or estopped by the terms and provisions of her will nor of the decree of distribution in her estate. He entered no appearance in, nor did he have any personal notice of those proceedings. The terms of a will or a decree of a court in administering an estate cannot thus deprive a third person of his property."

"Nor does a decree of distribution create a title in any event. It only declares who has acquired the title of the deceased." *Kempf v. Michelbach,* 115 Wash. 193, 200, 196 Pac. 661.

■ We find no comfort for appellants in the language—applicable to the facts in the cases cited by appellants—of some of our opinions to the effect that, as the superior court is a court of general jurisdiction and a probate proceeding is a matter *in rem,* upon a proper notice those notified and all the world are bound by the decree of distribution entered in the probate proceeding. As the *res* in such a proceeding does not include property inventoried in the estate if such property does not belong to the decedent, the owner of that property would not be estopped by the decree of distribution unless the question of title to the property was before the probate court.

"The inventory is not conclusive as to the assets of the estate, or as to rights with respect to the property listed therein, at least where there has been no specific judicial determination of the question." 21 Am. Jur. 471.

The decree of distribution in the estate of Mable Bragg distributed only such interest—she had none—as Mable Bragg had in the property in question at the time of her

death. That decree did not create title. The title to the real property was not litigated in the probate of the Bragg estate; there was no judicial determination as to what title Mable Bragg had. No question of title was even suggested. The decree of distribution only declared who had acquired the title of the deceased.

There is nothing in the probate proceedings in the Bragg estate to charge the guardian *ad litem* appointed to represent the minors in those proceedings with notice that the property, which is the subject matter of this controversy, was not owned by Mable Bragg. No duty was imposed upon him to make a title search, as made by a title insurance company when the property was sold by James Mezere, to ascertain what title Mable Bragg had to the property.

We adopt as our own the following from the opinion of the trial court:

"All that the court in the ordinary probate does is to determine judicially who takes the property left by the decedent, and as the decedent in the Bragg estate had no title to or legal interest in this property, . . . the probate court was lacking in power or authority to distribute it.

"It is . . . contended . . . that as the property was inventoried in the estate of Mable Bragg and referred to in the petition for distribution and since the defendant minors were given notice and appeared by their guardian *ad litem*, they were therefore notified that the administrator was claiming the land as property of the estate and hence were required to resist such claim, and having failed to do so, are now estopped under the theory of *res adjudicata*. These infants were incompetent. They were heirs of their grandmother, Mrs. Bragg. As incompetents they could not resist the claim of the administratrix. However, they had notice of such claim and must be bound by the effect of such notice as much as would an adult brother, if bound at all.

"The guardian *ad litem* appeared for them. There is no showing that the guardian knew or was chargeable with notice that the property in question did not belong to the grandmother. If the infants are chargeable with notice that their property is about to be distributed and vested in the grandmother's estate, it would then appear that by artifice of this notice the guardian *ad litem* has failed in his duty, but no fact offered suggests any such failure. The guardian

was the eyes and ears of these infants. What he saw was a comparatively simple process of distribution. It would appear to me that if the infants are bound by this decree it must follow that the guardian would be responsible to them.

"To hold with [appellants] the court would be obliged to conclude that the property of the infants listed in the estate of the grandmother, who had died having no title to the property, legal or equitable, by the fact of listing, coupled with formal notice to such incompetents, can be judicially taken from the children when their representative neither knew nor had reason to suspect that any attempt was being made to divest these infants of their vested title. If this may be done in this case, the question may well arise as to what title will be safe against inadvertence or fraud arising in the probate of estates."

The judgment is affirmed.

ROBINSON, JEFFERS, and SCHWELLENBACH, JJ., concur.

